UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SHARON MORRISON,
                              Plaintiff,            1:14-CV-1409
                                                   (GTS/DEP)
v.

THE CITY OF HUDSON; CHERYL ROBERTS;
L. EDWARD MOORE; and JOHN DOE,
                              Defendants.
_____

APPEARANCES:                              OF COUNSEL:

WAITE & ASSOCIATES, P.C.                  STEPHEN J. WAITE, ESQ.
   Counsel for Plaintiff
199 New Scotland Ave.
Albany, New York 12208

GOLBERG SEGALLA, LLP                      JONATHAN BERNSTEIN, ESQ.
   Counsel for Defendants
8 Southwoods Blvd., Suite 300
Albany, New York 12211

GLENN T. SUDDABY, Chief United States District Judge

<u>**DECISION and ORDER**</u>

        Currently before the Court, in this civil rights action filed by Sharon Morrison

("Plaintiff") against the City of Hudson, Cheryl Roberts, L. Edward Moore, and John Doe

("Defendants") are the following motions: (1) Defendants' motion to dismiss certain claims in

Plaintiff's Complaint for failure to state a claim upon which relief can be granted, pursuant to

Fed. R. Civ. P. 12(b)(6) (Dkt. No. 13); and (2) Plaintiff's cross-motion for leave to file and serve

an Amended Complaint, pursuant to Fed. R. Civ. P. 15(a) (Dkt. No. 19).  For the reasons set

forth below, Defendants' motion is granted in part and denied in part, and Plaintiff's cross-

motion is granted in part and denied in part.

## I.    RELEVANT BACKGROUND

### A.    Plaintiff's Complaint

Generally, liberally construed, Plaintiff's Complaint alleges as follows.  (Dkt. No. 1.)  On or about August 21, 2013, the City of Hudson and the First Church of God in Christ, Inc. ("First Church"), were engaged in legal proceedings in which First Church sought to set aside a previously entered *in rem* tax foreclosure judgment.  (*Id.*, ¶ 7.)  The tax foreclosure involved a parcel of real property owned by First Church located at 405 Warren Street in the City of Hudson, New York ("405 Warren Street" or "subject premises").  (*Id.*)  As part of its mission, First Church used this property to house indigent individuals and allow certain members of the Church, including Plaintiff, to operate a business.  (*Id.*, ¶¶ 9, 11.)  Members of First Church's congregation and the individuals residing at 405 Warren Street are predominantly African American.  (*Id.*, ¶¶ 8-9.)

On or about August 17, 2013, the City of Hudson caused written notice to be placed on the building located at 405 Warren Street, advising the occupants that the property had been sold for unpaid taxes and that the Code Enforcement Officer and Building Inspector of the City of Hudson had determined that the building was unfit for human habitation due to several violations of the City and State Fire Prevention and Building Code.  (*Id.*, ¶ 10.)  The notice further advised the occupants that they were to vacate the premises by August 27, 2013.  (*Id.*)

On August 21, 2013, Plaintiff traveled to the subject premises for purposes of entering her business[1] on the first floor of the building.  (*Id.*, ¶ 11.)  Before entering the building, Plaintiff

---

[1]    The proposed Amended Complaint alleges that First Church permitted Plaintiff, and other members of the Church, to operate a hair salon on the subject premises.  (Dkt. No. 19, Attach. 2, ¶ 9 [Pl.'s Am. Compl.].)

was confronted by Defendant Roberts, who was on the premises in her capacity as Corporation Counsel for the City of Hudson.  (*Id.*, ¶ 12.)  Defendant Roberts advised Plaintiff that she would be trespassing if she entered the premises.  (*Id.*)  Plaintiff proceeded to enter the building, believing she had the legal right to do so, and stayed for approximately fifteen minutes.  (*Id.*)  While in the building, Defendant Roberts contacted Defendant Moore, Chief of Police for the City of Hudson, for the purpose of having Plaintiff arrested.  (*Id.*)  Upon exiting the building, Plaintiff was confronted by Defendant Moore, in the presence of Defendant Roberts, and informed that she was trespassing and placed under arrest.  (*Id.*, ¶ 13.)  In the process of placing Plaintiff under arrest, Defendant Moore placed his hands on Plaintiff, turned her around, pressed Plaintiff against the front window of the building, twisted her right wrist while pushing on Plaintiff's right shoulder, and placed Plaintiff's right and then left wrists into handcuffs.  (*Id.*, ¶ 14.)  Defendant Moore then turned Plaintiff over to Defendant John Doe, a police officer, who placed Plaintiff in the rear seat of a police car and transported her to the City of Hudson Police Department.  (*Id.*, ¶ 15.)

After arriving at the police station, Defendant John Doe handcuffed Plaintiff's hands to a bench and placed her ankles in restraining shackles.  (*Id.*, ¶ 16.)  Defendant John Doe completed a criminal complaint against Plaintiff, alleging that Plaintiff had trespassed on 405 Warren Street, in violation of Section 140.05 of the Penal Law of the State of New York.  (*Id.*, ¶ 17.)  Forty-five minutes after being detained at the station, Plaintiff was presented with an appearance ticket and released.  (*Id.*, ¶ 18.)  Thereafter, Plaintiff appeared in Hudson City Court and the charges against her were dismissed.  (*Id.*)

Based upon the foregoing factual allegations, the Complaint sets forth the following six claims: (1) a claim for false arrest; (2) a claim for false imprisonment; (3) a claim for malicious prosecution; (4) a claim for violation of, and conspiracy to violate, the Due Process Clause and Equal Protection Clause; (5) a claim for failure to train and/or supervise and failure to intervene; and (6) a claim for negligence.  (*Id.*, ¶¶ 19-42.)

More specifically, in the First Cause of Action, Plaintiff claims that Defendants committed the following wrongs, pursuant to 42 U.S.C. §§ 1983, 1985, 1986 and 1988: (a) depriving her of her liberty without due process of law, by taking her into custody and holding her against her will, without a legitimate basis for doing so; (b) "making an unreasonable search and seizure without due process of law";[2] (c) conspiring for the purpose of impeding and hindering the due course of justice, with intent to deny Plaintiff equal protection of the law; (d) refusing or neglecting to prevent such deprivations and denials; (e) failing to train and/or supervise Defendants Moore and John Doe; and (f) subjecting Plaintiff to unlawful arrest and seizure without probable cause and/or a reasonable belief that Plaintiff had committed an offense, in violation of 42 U.S.C. § 1983 and the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.  (*Id.*, ¶¶ 19-25.)

In the Second Cause of Action, Plaintiff claims that, as a result of her unlawful detention and confinement, Defendants deprived her of both her liberty without due process of law and her right to equal protection of the laws, in violation of 42 U.S.C. § 1983 and the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.  (*Id.*, ¶¶ 26-27.)

---

[2]    The Complaint contains no factual allegations of any search that occurred, or of any seizure that occurred other than the alleged false arrest. (Dkt. No. 1.)  Moreover, Plaintiff's opposition memorandum of law mentions no claim of search and seizure.  (Dkt. No. 19, Attach. 3.)  As a result, the Court does not liberally construe Plaintiff's Complaint as attempting to assert a claim of unreasonable search and seizure.

In the Third Cause of Action, Plaintiff claims that, as a result of Defendants' conduct, she was subjected to a baseless criminal complaint and proceeding intended to deprive Plaintiff of both her liberty without due process of law and her right to equal protection, in violation of 42 U.S.C. § 1983 and the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. (*Id.*, ¶¶ 28-29.)

In the Fourth Cause of Action, Plaintiff claims that Defendants conspired to deprive her of her liberty without due process of law and her right to equal protection, in violation of 42 U.S.C. § 1983 and the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. (*Id.*, ¶¶ 30-31.)

In the Fifth Cause of Action, Plaintiff claims that Defendant Moore and the City of Hudson, acting pursuant to official policy or custom, failed to supervise, instruct, and/or train Defendant John Doe to refrain from the following: (a) unlawfully and maliciously harassing a citizen; (b) unlawfully and maliciously arresting, imprisoning, and prosecuting a citizen; and (c) conspiring to violate Plaintiff's rights, privileges, and immunities protected by the United States and New York State Constitutions. (*Id.*, ¶¶ 32-34.) Furthermore, Plaintiff alleges that Defendant Moore and the City of Hudson had the power to prevent the commission of these wrongs but failed to do so. (*Id.*, ¶ 36.)

Finally, in the Sixth Cause of Action, Plaintiff claims that the City of Hudson, Defendant John Doe, and Defendant Moore were negligent. (*Id.*, ¶¶ 39-42.) Specifically, Plaintiff claims that the City of Hudson and Defendant Moore had a duty to supervise and/or train police officers from subjecting citizens to false arrest, false imprisonment, excessive force, and malicious prosecution but failed to do so. (*Id.*, ¶ 39.) With respect to Defendant Moore, Plaintiff claims

that he breached a duty of care by failing to act as an ordinary police chief, failing to perform his duties, and failing to adequately control and supervise his officers. (*Id.*, ¶ 41.) With regard to Defendant John Doe, Plaintiff claims that he breached his duty of care to conduct a proper investigation. (*Id.*, ¶ 40.)

### B.    Defendants' Motion to Dismiss

Defendants have moved to dismiss the following claims: (1) all claims against Defendant Roberts; (2) Plaintiff's conspiracy claim and claims under 42 U.S.C. §§ 1985 and 1986; (3) all federal claims against the City of Hudson; (4) all state law claims against Defendants; (5) Plaintiff's due process claim under the Fourteenth Amendment; (6) Plaintiff's equal protection claim under the Fourteenth Amendment; (7) Plaintiff's failure-to-intervene claim; (8) any claims brought under the Fifth Amendment; (9) Plaintiff's Fourteenth Amendment claim; and (10) Plaintiff's claim for punitive damages against the City of Hudson. (Dkt. No. 13, Attach. 4, at 5-19 [Defs.' Mem. of Law].)

### C.    Plaintiff's Proposed Amended Complaint[3]

With certain exceptions, the factual allegations contained in Plaintiff's proposed Amended Complaint are substantially identical to those in her original Complaint. For purposes of brevity, the Court will not restate those allegations here. However, the Court notes that, in her proposed Amended Complaint, Plaintiff seeks to include additional claims against the individual Defendants. Specifically, with respect to Defendant Roberts, the proposed Amended Complaint

---

[3]    The Court notes that Plaintiff has failed to comply with Local Rule 7.1(a)(4) of the Local Rules of Practice for this Court, which governs motions to amend pleadings. Specifically, Local Rule 7.1(a)(4) states that a motion to amend "must set forth specifically the proposed amendments and identify the amendments in the proposed pleading, either through the submission of a red-lined version of the original pleading or other equivalent means." N.D.N.Y. L.R.7.1(a)(4). Plaintiff has failed to identify her proposed amendments through either means.

sets forth the following four claims: (1) a claim that Defendant Roberts unjustifiably precluded Plaintiff from exercising her right to possess, use, and enjoy her property rights in 405 Warren Street and preventing her from pursuing her chosen profession, in violation of 42 U.S.C. § 1983 and the Fourteenth Amendment; (2) a claim that Defendant Roberts unjustifiably instigated an unlawful arrest of Plaintiff by falsely accusing her of trespassing on 405 Warren Street, in violation of 42 U.S.C. § 1983, the Fourteenth Amendment, and New York State law; (3) a claim that Defendant Roberts subjected Plaintiff to malicious prosecution, in violation of 42 U.S.C. § 1983, the Fourth and Fourteenth Amendments, and New York State law; and (4) a claim that Defendant Roberts acted with racial animus when she deprived Plaintiff of her property rights and instigating a false arrest, in violation of 42 U.S.C. § 1983 and the Equal Protection Clause of the Fourteenth Amendment.  (Dkt. No. 19, Attach. 2, ¶¶ 20-40 [Pl.'s Am. Compl.].)

With respect to Defendant Moore, the proposed Amended Complaint sets forth the following four claims: (1) a claim that Defendant Moore unlawfully arrested and detained Plaintiff in violation of 42 U.S.C. § 1983, the Fourteenth Amendment, and New York State law; (2) a claim that Defendant Moore used excessive force during Plaintiff's arrest, in violation of 42 U.S.C. § 1983, the Fourth Amendment, and New York State law; (3) a claim that Defendant Moore's actions in falsely arresting Plaintiff and subjecting her to excessive force were motivated by racial animus due to her being African American and belonging to a church congregation consisting of mostly African-American members, in violation of the Equal Protection Clause; and (4) a claim that Defendant Moore acted negligently and breached the duty of care owed to Plaintiff when he physically harmed her during her arrest.  (*Id.*, ¶¶ 41-53.)

With respect to Defendant John Doe, the proposed Amended Complaint sets forth the following three claims: (1) a claim that Defendant John Doe used excessive and physical force while handcuffing Plaintiff's wrists to a bench and placing her ankles in shackles, in violation of 42 U.S.C. § 1983, the Fourth Amendment, and New York State law; (2) a claim that Defendant John Doe's treatment of Plaintiff while in his custody was motivated by racial animus due to her being African American and belonging to a church congregation consisting of mostly African-American members, in violation of 42 U.S.C. § 1983 and the Equal Protection Clause; and (3) a claim that Defendant John Doe acted negligently during Plaintiff's arrest and breached the duty of care owed to Plaintiff when he physically harmed her while placing her in handcuffs. (*Id.*, ¶¶ 62-65.)

Finally, with respect to the City of Hudson, the proposed Amended Complaint sets forth the following two claims: (1) a claim that the City of Hudson, in its effort to remove all occupants from the subject premises, unlawfully deprived Plaintiff of her property rights and subjected her to an unlawful arrest, detention, assault and battery, and malicious prosecution, in violation of 42 U.S.C. § 1983, the Fourth and Fourteenth Amendments, and New York State law; and (2) a claim that the City of Hudson is responsible for the negligent acts of Defendants Moore and John Doe for their failure to exercise reasonable care while placing Plaintiff under arrest and detaining her so as to prevent her from being physically injured. (*Id.*, ¶¶ 71-72.)

## II.    RELEVANT LEGAL STANDARD

It has long been understood that a defendant may base a motion to dismiss for failure to state a claim upon which relief can be granted on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal

cognizability of the claim. *Jackson v. Onondaga Cty.*, 549 F. Supp. 2d 204, 211, nn.15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review).

Because such motions are often based on the first ground, a few words on that ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212, n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at 212, n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34(1)(b) at 12-61 (3d

ed. 2003).  For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard.  *Rusyniak,* 629 F. Supp. 2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677-83, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atl. Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007).  In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99 (1957),  that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Twombly*, 550 U.S. at 561, 127 S. Ct. at 1968-69.  Rather than turning on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim.  *Id*. at 556-70, 127 S. Ct. at 1965-74.  The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean the pleading must contain at least "some factual allegation[s]."  *Id*. at 555, 127 S. Ct. at 1965, n.3.  More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true.  *Id*. at 554, 127 S. Ct. at 1965.[4]

---

[4]         It should be emphasized that Fed. R. Civ. P. 8's plausibility standard, explained in *Twombly*, was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus*, in which the Court stated, "*Specific* facts are not necessary" to successfully state a claim under Fed. R. Civ. P. 8(a)(2).  *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 2200 (2007) (emphasis added).  That statement was merely an abbreviation of the often-repeated point of law–first offered in *Conley* and repeated in *Twombly*–that a pleading need not "set out *in detail* the facts upon

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950 [internal quotation marks and citations omitted]. However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.*, it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully- harmed-me accusation." *Id.*

---

which [the claim is based]" in order to successfully state a claim. *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965, n.3 (citing *Conley*, 355 U.S. at 47) (emphasis added). That statement did not mean that all pleadings may achieve the requirement of "fair notice" without ever alleging any facts whatsoever. Clearly, there must still be enough facts set out (however set out, whether in detail or in a generalized fashion) to raise a right to relief above the speculative level to a plausible level. *See Rusyniak,* 629 F. Supp. 2d at 214 & n.35 (explaining holding in *Erickson*).

Finally, a few words are appropriate regarding what documents are considered on a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6).  The court may consider the following documents without triggering the summary judgment standard: "(1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference into the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case." *Planck v. Schenectady Cty.*, 12-CV-0336, 2012 WL 1977972, at *5 (N.D.N.Y. June 1, 2012) (Suddaby, J.).

## III.    ANALYSIS

### A.    Whether Defendant Roberts Acted Under Color of State Law When She Contacted the Police Regarding Plaintiff's Alleged Trespass and Whether Defendant Roberts Can Be Found Liable for False Arrest and Imprisonment

Defendants argue that Defendant Roberts was not acting under color of state law when she contacted Defendant Moore and thus cannot be found liable for false arrest for the following four reasons: (1) Defendant Roberts simply advised Plaintiff that she could not enter the building and contacted Defendant Moore after Plaintiff ignored her; (2) Defendant Roberts did not have the authority or ability to arrest Plaintiff; (3) Defendant Roberts did not actually arrest, search, or seize Plaintiff; and (4) Defendant Moore witnessed Plaintiff trespassing and exercised his own independent judgment when he arrested her.  (Dkt. No. 13, Attach. 4, at 5-8 [Defs.' Mem. of Law].)

In opposition, Plaintiff argues that she is entitled to maintain an action against Defendant Roberts under § 1983 for the following three reasons.  First, Plaintiff argues that Defendant Roberts instigated her arrest by giving the police information which she knew to be false.  (Dkt.

No. 19, Attach. 3, at 5-6 [Pl.'s Opp'n Mem. of Law].)  According to Plaintiff, Defendant Roberts knew the information was false because Plaintiff was a tenant of 405 Warren Street and she had been provided with written notice that she could continue to occupy the premises until August 27, 2013.  (*Id.* at 5.)  Plaintiff relies on *Rosario v. Amalgamated Ladies Garment Cutters' Union, Local 10 I.L.G.W.U.*, 605 F.2d 1228 (2d Cir. 1979), in support of her argument that Defendant Roberts cannot provide false information to the police, instigate an arrest, and then escape liability by arguing that she was not the one who placed Plaintiff under arrest.  (*Id.* at 7.)

Second, Plaintiff argues that there are no allegations in either the Complaint or proposed Amended Complaint plausibly suggesting that Defendant Moore witnessed Plaintiff trespassing and exercised his own judgment in deciding to arrest her.  (*Id.* at 6.)  Moreover, Plaintiff argues that, even had Defendant Moore witnessed Plaintiff in the building, he would have had to receive additional information from someone else that Plaintiff was not lawfully on the premises.  (*Id.*)

Third, and finally, Plaintiff argues that, at the time of her arrest, Defendant Roberts was acting on behalf of the City of Hudson and exercising the authority she possessed as a result of being city attorney.  (*Id.* at 8.)  Accordingly, Plaintiff argues that Defendant Roberts was acting under color of state law.  (*Id.*)

In reply, Defendants reiterate their argument that Defendant Roberts did not arrest or detain Plaintiff and simply calling the police does not suffice to establish liability.  (Dkt. No. 23, Attach. 3, at 4 [Defs.' Reply Mem. of Law].)  Furthermore, Defendants have provided a copy of a judgment decreeing the City the owner of the subject premises, which is integral to the Complaint, under the circumstances.  (Dkt. No. 23, Attach. 1.)  Based upon this judgment, Defendants argue that Plaintiff was in fact trespassing at the time of her arrest and Defendant

Roberts did not provide false information to Defendant Moore.  (Dkt. No. 23, Attach. 3, at 4 [Defs.' Reply Mem. of Law].)

### 1.    Whether Defendant Roberts Acted Under Color of State Law

After carefully considering the matter, the Court agrees with Plaintiff with regard to this issue for the reasons stated in her opposition memorandum of law.  (Dkt. No. 19, Attach. 3, at 8 [Pl.'s Opp'n Mem. of Law].)  To those reasons, the Court adds the following analysis.

"Mere employment by a state or municipality does not automatically mean that a defendant's actions are taken under the color of state law."  *Kern v. City of Rochester*, 93 F.3d 38, 43 (2d Cir. 1996).  "To act under color of law for purposes of Section 1983, 'the defendant must have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'"  *Whitnum v. Emons*, 15-CV-0959, 2015 WL 5010623, at *2 (D. Conn. Aug. 24, 2015) (quoting *Monsky v. Moraghan*, 127 F.3d 243, 245 [2d Cir. 1997]).  "Actions of state actors taken in the realm of their 'personal pursuits' are not taken under color of law."  *Whitnum*, 2015 WL 5010623, at *2 (citing *Pitchell v. Callan*, 13 F.3d 545, 548 [2d Cir. 1994]).

Here, the Complaint alleges, and Defendants do not dispute, that Defendant Roberts was on the subject premises in her capacity as the City's Corporation Counsel and was acting on the City's behalf when she advised Plaintiff not to enter the building.  It is reasonably clear that Defendant Roberts was not acting as a private citizen through the duration of her encounter with Plaintiff.  Rather, the Complaint alleges facts plausibly suggesting that Defendant Roberts exercised her power, as the City's representative, when she warned Plaintiff not to enter the building and subsequently contacted police.  Accordingly, because Defendant Roberts was

acting pursuant to her official duties as corporation counsel, Plaintiff has stated a claim under §

1983.  *See West v. Atkins*, 487 U.S. 42, 50 (1988) (noting that "generally, a public employee acts

under color of state law while acting in his official capacity or while exercising his

responsibilities pursuant to state law").

### 2.    Whether Defendant Roberts Can Be Found Liable for False Arrest and False Imprisonment[5]

After carefully considering the matter, the Court agrees with Defendants with regard to

this issue for the reasons stated in their reply memorandum of law only.  (Dkt. No. 23, Attach. 3,

at 4 [Defs.' Reply Mem. of Law].)  To those reasons, the Court adds the following analysis.

"Under New York state law, to prevail on a claim of false arrest a plaintiff must show

that '(1) the defendant intended to confine him, (2) the plaintiff was conscious of the

confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not

otherwise privileged.'" *Jocks v. Tavernier*, 316 F.3d 128, 134-35 (2d Cir. 2003) (quoting

*Broughton v. State*, 37 N.Y.2d 451, 456 [N.Y. 1975]).

As an initial matter, Plaintiff has alleged facts plausibly suggesting that Defendant

Roberts intended to confine her, she did not feel free to leave and was thus conscious of the

confinement, and she did not consent to the confinement.  (Dkt. No. 1, ¶¶ 12-18 [Pl.'s Compl.].)

With respect to the fourth element, Defendants' argument that Defendant Roberts cannot be

liable because she was not the one who actually detained and arrested Plaintiff is without merit.

---

[5]    "The elements of a false arrest claim under § 1983 are substantially the same as the elements of a false arrest claim under New York law . . . . And, because false arrest is a type of false imprisonment, the two claims have identical elements." *Mitchell v. Home*, 377 F. Supp. 2d 361, 371 (S.D.N.Y. 2005) (citing *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 118 [2d Cir. 1995]); *Holland v. City of Poughkeepsie*, 90 A.D.3d 841, 844-45 (N.Y. App. Div. 2d Dept. 2011) (noting that false arrest and false imprisonment "are two names for the same tort").  For this reason, the Court will address these claims together.

Specifically, if a confinement is unprivileged, "'the one who instigates it is subject to liability to the person confined for the false imprisonment. Instigation consists of words or acts which direct, request, invite or encourage the false imprisonment itself.'" *Biswas v. City of New York*, 973 F. Supp. 2d 504, 519 (S.D.N.Y. 2013) (quoting Restatement [Second] of Torts § 45A [1965]). "Thus, if a defendant instigates a false arrest with the intention that the plaintiff be confined, the defendant can be held liable for false arrest even without participating in the actual acts of confinement." *Biswas*, 973 F. Supp. 2d at 519 (citing *Lowmack v. Eckerd Corp.*, 303 A.D.2d 998 [N.Y. App. Div. 4th Dept. 2003]); *see also Fowler v. Robinson*, 94-CV-0836, 1996 WL 67994, at *5-6 (N.D.N.Y. Feb. 15, 1996) (McAvoy, C.J.) (holding social workers potentially liable for false arrest where question existed as to whether they instigated the arrest); *Lopez v. City of New York*, 901 F. Supp. 684, 688 (S.D.N.Y. 1995) (holding community board chairperson "who [was] not an arresting officer may be liable for false arrest if the defendant instigated an arrest by a police officer, knowing that there was no probable cause to believe that plaintiff committed a crime"); *accord*, *Weintraub v. Bd. of Educ. of City of New York*, 423 F. Supp. 2d 38, 56 (E.D.N.Y. 2006).

Notwithstanding the above, the Court agrees with Defendants that Defendant Roberts did not provide knowingly false information, or even false information, to the police. Specifically, Defendants have established that the subject premises belonged to the City of Hudson at the time of the incident.[6] Although Plaintiff alleges that the written notice posted on the building allowed

---

[6]     The judgment and Order decreeing the City of Hudson the owner of the subject premises is a public record, of which this Court may take judicial notice. *See Pacherille v. Burns*, 30 F. Supp. 3d 159, 161 n.3 (N.D.N.Y. 2014) (Sharpe, C.J.) (holding that "[a] court may take judicial notice of matters of public record, including . . . decisions in prior state court adjudications") (quoting *Johnson v. Pugh*, 11-CV-0385, 2013 WL 3013661, at *2 [E.D.N.Y. June 18, 2013]).

her to remain lawfully on the premises, Defendant Roberts, as the City's Corporation Counsel, had the authority to withdraw any continued and/or permissive use.  N.Y. Penal Law § 140.00(5); *see also Rager v. McCloskey*, 305 N.Y. 75, 79 (N.Y. 1953) (holding that "[a] trespass may consist, not only in making an unauthorized entry upon private property, but in refusing to leave after permission to remain has been withdrawn"); *Navarro v. Fed. Paper Bd. Co.*, 185 A.D.2d 590, 592 (N.Y. App. Div. 3d Dept. 1992) (holding that "[i]t is well settled that a license or privilege to remain in a building or public place may be terminated by a 'lawful' order not to . . . remain which is 'personally communicated' to the prospective trespasser by the owner or other authorized person.  A person who defies such order will have . . . remained unlawfully on the premises").

Accordingly, because Defendant Roberts lawfully directed Plaintiff to leave the premises, and Plaintiff ignored that request, Defendant Roberts did not knowingly provide false information to the police regarding Plaintiff's trespass.  For these reasons, Plaintiff's unlawful arrest and/or false imprisonment claim with respect to Defendant Roberts is dismissed.

**B.      Whether Plaintiff Has Alleged Facts Plausibly Suggesting that Defendant Roberts Subjected Her to Malicious Prosecution[7]**

Defendants argue that there is no basis for a malicious prosecution claim against Defendant Roberts for the following two reasons: (1) Defendant Roberts did not initiate legal

---

[7]      The Court will consider Plaintiff's malicious prosecution claim under federal and New York State law together.  *See Jocks*, 316 F.3d at 134 (noting that "[c]laims for false arrest or malicious prosecution, brought under § 1983 to vindicate the Fourth and Fourteenth Amendment right to be free from unreasonable seizures, are substantially the same as claims for false arrest or malicious prosecution under state law"); *accord*, *Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003) (noting that "[t]he elements of false arrest and malicious prosecution under § 1983 are substantially the same as the elements under New York law . . . . Therefore, the analysis of the state and the federal claims is identical.").

proceedings against Plaintiff; and (2) Defendant Roberts could not have acted with malice because she was not the one who arrested Plaintiff.  (Dkt. No. 13, Attach. 4, at 6 [Defs.' Mem. of Law].)

In opposition, Plaintiff argues that Defendant Roberts subjected Plaintiff to a criminal prosecution as a result of providing falsified information to the police.  (Dkt. No. 19, Attach. 3, at 9 [Pl.'s Opp'n Mem. of Law].)  According to Plaintiff, her criminal charges were later dismissed due to lack of a factual foundation and, therefore, there was no probable cause for the underlying arrest.  (*Id.*)  Rather, Plaintiff argues that Defendant Roberts acted solely to embarrass, humiliate, and injure her by subjecting her to criminal charges.  (*Id.*)

In reply, Defendants reiterate their argument that Defendant Roberts did not initiate a criminal proceeding against Plaintiff because she was not the one who issued an appearance ticket.  (Dkt. No. 23, Attach. 3, at 4 [Defs.' Reply Mem. of Law].)

After carefully considering the matter, the Court agrees with Defendants for the reasons stated above in Part III.A.2. of this Decision and Order.  To those reasons, the Court adds the following analysis.

"In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment . . . and must establish the elements of a malicious prosecution claim under state law." *Manganiello v. City of New York*, 612 F.3d 149, 160-61 (2d Cir. 2010) (internal citations omitted).  "To establish a malicious prosecution claim under New York law, a plaintiff must prove '(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation

for defendant's actions.'" *Manganiello*, 612 F.3d at 161 (quoting *Murphy v. Lynn*, 118 F.3d 938, 947 [2d Cir. 1997]).  With respect to the third element, "probable cause is 'the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of or whether a discreet and prudent person would be led to the belief that a crime had been committed by the person charged.'" *Gilman v. Marsh & McLennan Cos., Inc.*, 868 F. Supp. 2d 118, 129-30 (S.D.N.Y. 2012) (quoting *Silver v. Kuehbeck*, 05-CV-0035, 2005 WL 2990642, at *19 [S.D.N.Y. Nov. 7, 2005]).  Significantly, "a civilian may be liable for malicious prosecution where the plaintiff shows that the civilian 'initiated or instigated the proceedings against [her] by contacting the police and then encouraging their prosecution.'" *Arum v. Miller*, 273 F. Supp. 2d 229, 234 (E.D.N.Y. 2003) (quoting *Shattuck v. Town of Stratford*, 233 F. Supp. 2d 301, 313 [D. Conn. 2002]).

Having determined that it was reasonable for Defendant Roberts to believe that Plaintiff was trespassing upon the premises, the Court cannot find that Plaintiff has stated a claim for malicious prosecution.  Although Plaintiff appears to place significant weight on the fact that her criminal charges were dismissed in arguing that probable cause did not exist, such a dismissal is not dispositive of the issue of the existence of probable cause.  *See Pacicca v. Stead*, 456 F. App'x 9, 12 (2d Cir. 2011) (stating that, "'even if a civilian complainant is ultimately incorrect in his belief as to whether a person is committing a crime, he need only have had a reasonable basis for this belief in order to have the probable cause necessary to defeat a malicious prosecution . . . claim'") (quoting *TADCO Constr. Corp. v. Dormitory Auth.*, 700 F. Supp. 2d 253, 275 [E.D.N.Y. 2010]); *Williams v. Town of Greenburgh*, 535 F.3d 71, 78-79 (2d Cir. 2008)

(affirming dismissal of false arrest and malicious prosecution claims against a civilian complainant who reasonably but erroneously thought plaintiff was trespassing based on his knowledge that the plaintiff had previously been barred from the site).

Finally, the Complaint does not allege any facts plausibly suggesting that Defendant Roberts actually encouraged the subsequent criminal prosecution of Plaintiff. *See White v. Frank*, 855 F.2d 956, 962 (2d Cir. 1988) (stating that, "[i]f the defendant merely states what he believes, leaving the decision to prosecute entirely to the uncontrolled discretion of the officer . . . the [defendant] is not regarded as having instigated the prosecution") (quoting W. Prosser, Law of Torts § 653 comment g [4th ed. 1971]). Specifically, the Complaint and proposed Amended Complaint allege that Defendant Roberts did nothing more than contact Defendant Moore regarding Plaintiff's alleged trespass. (Dkt. No. 1, ¶ 12 [Pl.'s Compl.]; Dkt. No. 19, Attach. 2, ¶ 13 [Pl.'s Am. Compl.].) Accordingly, there are no allegations plausibly suggesting that Defendant Roberts instigated Plaintiff's arrest other than contacting Defendant Moore to report what she reasonably believed was Plaintiff's trespass on the subject premises.

**C.    Whether Plaintiff Has Alleged Facts Plausibly Suggesting that Defendant Roberts Deprived Plaintiff of a Property Interest and/or Prevented Plaintiff from Pursuing Her Chosen Profession Without Due Process of Law**

Defendants argue that there is no basis for a violation of the Due Process Clause against Defendant Roberts because Plaintiff has failed to demonstrate conduct that is so outrageous that it shocks the conscience. (Dkt. No. 13, Attach. 4, at 17 [Defs.' Mem. of Law].)

In opposition, Plaintiff argues that Defendant Roberts' actions unjustifiably prevented Plaintiff from pursuing her chosen occupation as a hairdresser. (Dkt. No. 19, Attach. 3, at 9-10 [Pl.'s Opp'n Mem. of Law].) Furthermore, Plaintiff argues that Defendant Roberts prevented

Plaintiff from possessing, using, and enjoying her property rights when she subjected Plaintiff to a false arrest and criminal prosecution. (*Id.*)

In reply, Defendants argue that Plaintiff's claim should be dismissed for the following three reasons: (1) Plaintiff does not have a property interest in 405 Warren Street because she is neither the owner nor a tenant; (2) Defendant Roberts did not strip Plaintiff of her ability to be a hairdresser; and (3) Plaintiff can still perform her occupation in a different location. (Dkt. No. 23, Attach. 3, at 3-4 [Defs.' Reply Mem. of Law].)

After carefully considering the matter, the Court agrees with Defendants for the reasons stated in their reply memorandum of law only. (Dkt. No. 23, Attach. 3, at 3-4 [Defs.' Reply Mem. of Law].) To those reasons, the Court adds the following analysis.

"In order to establish a due process claim under § 1983, a plaintiff must demonstrate that he possessed a protected property or liberty interest and was deprived of it without due process." *Palacio v. Pagan*, 345 F. App'x 668, 669 (2d Cir. 2009) (citing *McMenemy v. City of Rochester*, 241 F.3d 279, 285-86 [2d Cir. 2001]). "While property interests are constitutionally protected, they are not generally constitutionally *established*; rather, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law–rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'" *Velez v. Levy*, 401 F.3d 75, 85 (2d Cir. 2005) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 [1972]). Thus, in order to assert a property interest, a plaintiff cannot rely on an "'abstract need or desire for it,' nor [on] a 'unilateral expectation of it,' [instead,] a plaintiff must have a 'legitimate claim of entitlement to it.'" *Safepath Sys. LLC v. N.Y.C. Dep't of Educ.*, 563 F. App'x 851, 855 (2d Cir. 2014) (citing *Bd. of Regents of State Colls.*, 408 U.S. at 577).

Here, Plaintiff appears to assert a property interest in the subject premises based upon her status as a licensee. A licensee is "[a] person who has a privilege to enter upon land arising from the permission or consent, express or implied, of the possessor of land but who goes on the land for his own purpose rather for any purpose or interest of the possessor." *Gladsky v. Sessa*, 06-CV-3134, 2007 WL 2769494, at *8 (E.D.N.Y. Sept. 21, 2007). "A licensee is differentiated from a tenant under New York law: 'Whereas a license connotes use or occupancy of the grantor's premises, a lease grants exclusive possession of designated space to a tenant, subject to rights specifically reserved by the lessor.'" *Smith v. Cty. of Nassau*, 10-CV-4874, 2015 1507767, at *8 (E.D.N.Y. Mar. 31, 2015) (quoting *Am. Jewish Theatre, Inc. v. Roundabout Theatre Co., Inc.*, 203 A.D.2d 155, 156 [N.Y. App. Div. 1st Dept. 1994]). "A license is 'cancellable at will, and without cause.'" *Smith*, 2015 1507767, at *8 (quoting *Am. Jewish Theatre, Inc.*, 203 A.D.2d at 156).

Defendants argue, and Plaintiff does not dispute, that no lease existed between Plaintiff and the City of Hudson or First Church. Rather, Plaintiff alleges in her Complaint and proposed Amended Complaint that she had permission from First Church to use the premises for purposes of running a business. (Dkt. No. 1, ¶¶ 9, 11 [Pl.'s Compl.]; Dkt. No. 19, Attach. 2, ¶ 9 [Pl.'s Am. Compl.].) As an initial matter, as discussed above in Part III.A.2. of this Decision and Order, Defendants have established that the City of Hudson was the owner of the subject premises at the time Plaintiff was arrested. Therefore, Plaintiff's relationship with First Church, and any alleged permission First Church gave to Plaintiff to use the premises, is irrelevant. In any event, it is well established that Plaintiff, as a licensee, did not have "a cognizable interest in the continued occupancy of [the] property." *Smith*, 2015 WL 1507767, at *8; *see also Pelt v. City of New York*,

11-CV-5633, 2013 WL 4647500, at *8-9 (E.D.N.Y. Aug. 28, 2013) (holding that, "[u]nder New York law, it is well settled that a 'licensee acquires no possessory interest in property'"); *Gladsky*, 2007 WL 2769494, at *8 (noting that "[i]t has long been the rule in New York that a licensee, as opposed to a tenant or one having a greater interest in the use o[f] particular property, cannot maintain an action for wrongful eviction"); *Visken v. Oriole Realty Corp.*, 305 A.D.2d 493, 495 (N.Y. App. Div. 2d Dept. 2003) (holding that "[s]ince the plaintiff was a mere licensee or 'squatter,' [defendant], as owner, had an owner's common-law right to oust her without legal process"); *White Plains Towing Corp. v. Patterson*, 991 F.2d 1049, 1062 (2d Cir. 1993) (holding that "[a]n interest that state law permits to be terminated at the whim of another person is not a property right that is protected by the Due Process Clause").

Finally, Plaintiff's claim that Defendant Roberts prevented her from pursuing her chosen occupation is also without merit.  Defendants correctly argue that Plaintiff has failed to allege facts plausibly suggesting that they have prevented her from pursuing her occupation in another venue.  *See Brody v. Moan*, 551 F. Supp. 443, 448 (S.D.N.Y. 1983) (dismissing plaintiffs' due process claim against city arising from their eviction from space in which they had been operating a parking garage, noting that "[t]he City has taken no additional action of any type which would prohibit or prevent the plaintiffs from operating a parking garage elsewhere or from earning a living by any other means").  Moreover, Plaintiff has not pointed to any rule or understanding justifying a legitimate expectation that she could continue to operate a hair salon on the subject premises without interruption.  *Bd. of Regents*, 408 U.S. at 577; *see also Brody*, 551 F. Supp. at 448 (holding that plaintiffs have not pointed to a rule or understanding "giving rise to a legitimate expectation that they could continue to operate their parking garage at its present location until they either chose to retire or obtained the means to move elsewhere").

-23-

Accordingly, Plaintiff's Fourteenth Amendment claim alleging that Defendant Roberts deprived Plaintiff of a property right and precluded her from pursuing her chosen profession is dismissed.

**D.     Whether Plaintiff Has Alleged Facts Plausibly Suggesting that Defendants Denied Her Right to Equal Protection Under the Fourteenth Amendment**

Defendants argue that Plaintiff has failed to allege facts plausibly suggesting that there was a denial of her right to equal protection for the following two reasons: (1) the Complaint does not allege disparate treatment from those similarly situated nor any claim that such treatment was based upon constitutionally impermissible considerations; and (2) Plaintiff's allegations fail to demonstrate irrational and arbitrary conduct.  (Dkt. No. 13, Attach. 4, at 18 [Defs.' Mem. of Law].)

In opposition, Plaintiff does not directly address Defendants' motion to dismiss her equal protection claim.  Rather, Plaintiff appears to argue that the City treated her unfairly in that it was motivated to get rid of the building and its occupants at 405 Warren Street because it was interested in redeveloping and revitalizing the downtown area of Hudson.  (Dkt. No. 19, Attach. 3, at 14-15 [Pl.'s Opp'n Mem. of Law].)  In so doing, Plaintiff appears to argue that the City was motivated, in part, by the fact that the Church's congregation, including Plaintiff, is African American and the occupants that were residing on the premises are both minorities and indigent. (*Id.*)

In reply, Defendants argue that Plaintiff's claim should be dismissed for the following four reasons: (1) the Complaint alleges that all occupants inhabiting the building were told to leave due to the property belonging to the City and that it was unfit for human habitation; (2) Plaintiff's allegations implicitly acknowledge that she was treated no differently from the rest of

the occupants; (3) there is no support for Plaintiff's claim that Defendants' actions were racially motivated; and (4) the fact that Plaintiff happens to be African American and is a member of First Church is insufficient to state an equal protection claim.  (Dkt. No. 23, Attach. 3, at 5 [Defs.' Reply Mem. of Law].)

After carefully considering the matter, the Court agrees with Defendants for the reasons stated in their memorandum of law and reply memorandum of law.  (Dkt. No. 13, Attach. 4, at 18 [Defs.' Mem. of Law]; Dkt. No. 23, Attach. 3, at 3-4 [Defs.' Reply Mem. of Law].)  To those reasons, the Court adds the following analysis.

The Equal Protection Clause of the Fourteenth Amendment guarantees "'[the] right to be free from invidious discrimination in statutory classifications and other government activity.'" *Bernheim v. Litt*, 79 F.3d 318, 323 (2d Cir. 1996) (quoting *Harris v. McRae*, 448 U.S. 297, 322 [1980]).  "The Equal Protection Clause requires that the government treat all similarly situated people alike." *Harlen Assocs. v. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001).  Thus, "[a]n equal protection claim has two essential elements: (1) the plaintiff was treated differently than others similarly situated, and (2) this differential treatment was motivated by an intent to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person." *Lovell v. Comsewogue Sch. Dist.*, 214 F. Supp. 2d 319, 321-22 (E.D.N.Y. 2002) (citing *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 [2d Cir. 2000]).  "To allege a violation of the Equal Protection Clause, 'it is axiomatic that a plaintiff must allege that similarly situated persons have been treated differently.'" *Richard v. Fischer*, 38 F. Supp. 3d 340, 345 (W.D.N.Y. 2014) (quoting *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 193 [2d Cir. 1994]).

Here, the Complaint alleges that Plaintiff was denied equal protection of the law but does not offer any factual allegations in support of this claim or allege facts plausibly suggesting that she was treated differently from similarly situated individuals. (Dkt. No. 1, ¶¶ 21, 25, 27, 29, 31 [Pl.'s Compl.].) Rather, as discussed above, Plaintiff alleges that "the occupation of 405 Warren Street by [First Church] who provided housing to indigent minorities, did not fit into the City's plans for redevelopment of its downtown area and the false arrest of Plaintiff was designed to intimidate Plaintiff and other members of [First Church]." (*Id.*, ¶ 24.) Plaintiff makes similar allegations in her proposed Amended Complaint. (Dkt. No. 19, Attach. 2, ¶ 10 [Pl.'s Am. Compl.].) In addition, Plaintiff's proposed Amended Complaint alleges that the deprivation of her property rights, her false arrest, and her subjection to excessive force were all motivated by racial animus. (*Id.*, ¶¶ 38, 51, 59.) Finally, Plaintiff alleges that "as an African American woman belonging to a church congregation consisting of primarily African American members was treated differently from those non-African Americans similarly situated and by reason thereof, Plaintiff was denied her equal protection rights under the 14th Amendment." (*Id.*)

Plaintiff's allegations, in both her Complaint and proposed Amended Complaint, fail "to allege or identify a single similarly situated [person] who was treated differently." *Sweeney v. City of New York*, 03-CV-4410, 2004 WL 744198, at *6 (S.D.N.Y. Apr. 2, 2004). Instead, Plaintiff makes only conclusory allegations that Defendants discriminated against her because of race and/or gender and religion. *See McDowell v. N. Shore Long Island Jewish Health Sys.*, 788 F. Supp. 2d 78, 82 (E.D.N.Y. 2011) (stating that "plaintiff's conclusion that other similarly situated employees were treated more favorably than him is a bare conclusion, unsupported by any specific alleged facts"). It is well established that, where an equal protection claim is based

upon conclusory allegations that similarly situated individuals were treated more favorably, the claim is subject to dismissal. *See Christian v. Town of Riga*, 649 F. Supp. 2d 84, 94 (W.D.N.Y. 2009) (noting that, "at the motion to dismiss stage[,] bald allegations that defendants preferred one party over another are inadequate to state a claim for equal protection"); *Dellutri v. Vill. of Elmsford*, 895 F. Supp. 2d 555, 572 (S.D.N.Y. 2012) (holding that plaintiff's equal protection claims could not survive a motion to dismiss where complaint contained a conclusory assertion that plaintiff was treated differently from "other similarly situated property owners," but did not include any details about those individuals); *Bishop v. Best Buy, Co.*, 08-CV-8427, 2010 WL 4159566, at *11 (S.D.N.Y. Oct. 31, 2010) (holding that "well-pled facts showing that the plaintiff has been treated differently from others similarly situated remains an essential component of such a claim [and] [c]onclusory allegations of selective treatment are insufficient to state an equal protection claim") (internal quotation marks omitted); *Ruston v. Town Bd. for the Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010) (noting that plaintiffs failed to state viable equal protection claim under "class of one" theory of liability where they merely alleged less favorable treatment than "similarly situated" persons); *Woods v. City of Utica*, 902 F. Supp. 2d 273, 282 (N.D.N.Y. 2012) (Hurd, J.) (holding that "'[c]onclusory allegations of disparate treatment or plaintiff's personal belief of discriminatory intent is insufficient' to prevail on an equal protection claim") (quoting *Nash v. McGinnis*, 585 F. Supp. 2d 455, 462 [W.D.N.Y. 2008]).

Plaintiff has failed to allege facts plausibly suggesting Defendants acted with racial animus or that similarly situated individuals were treated more favorably. Therefore, Plaintiff's equal protection claim is dismissed.

**E.**    **Whether Plaintiff Has Alleged Facts Plausibly Suggesting that Defendant Moore Subjected Plaintiff to a False Arrest, Was Negligent, and Used Excessive Force When He Arrested Her**

**1.**    **Claim of False Arrest**

The First Cause of Action in Plaintiff's Complaint claims that Defendant Moore subjected Plaintiff to a false arrest under the Fourth Amendment, and the First Cause of Action in Plaintiff's proposed Amended Complaint alleges that Defendant Moore subjected Plaintiff to a false arrest under the Fourth Amendment and New York State law.  (Dkt. No. 1, ¶¶ 19-25 [Pl.'s Compl.]; Dkt. No. 19, Attach. 2, ¶¶ 41-45 [Pl.'s Am. Compl.].)  In support of this claim, Plaintiff sets forth the following two arguments: (1) Defendant Moore arrested her knowing that there was no probable cause to do so and without reasonable inquiry regarding her alleged lawful right to be on the subject premises; and (2) Defendant Moore arrested her in front of other members of the community for the sole purpose of embarrassing and humiliating her.  (Dkt. No. 19, Attach. 3, at 11-13 [Pl.'s Opp'n Mem. of Law].)

In opposition, Defendants argue that, because the proposed Amended Complaint alleges that Defendant Moore acted "in his capacity as chief of police for the City of Hudson" at the time of Plaintiff's arrest, Defendant Moore was acting within the scope of his official duties.  (Dkt. No. 23, Attach. 3, at 6 [Defs.' Reply Mem. of Law].)  Therefore, Defendants argue that Plaintiff's proposed state law claim for false arrest is futile because her claim is against the City of Hudson and not Defendant Moore in his individual capacity.  (*Id.*)  Finally, Defendants appear to oppose only Plaintiff's proposed false arrest claim under state law because they explicitly state that, while both claims "lack merit," they will not move to dismiss the false arrest claim under

the Fourth Amendment until after discovery.[8]  (*Id.* at 7.)

After carefully considering the matter, the Court agrees with Defendants for the reasons

stated in their reply memorandum of law.  (Dkt. No. 23, Attach. 3, at 7 [Defs.' Reply Mem. of

Law].)  In addition to those reasons, the Court notes that "an official-capacity suit is, in all

respects other than name, to be treated as a suit against the entity . . . [and] is *not* a suit against

the official personally." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985); *see also Monell v.*

*Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978) (noting that "official-capacity

suits generally represent only another way of pleading an action against an entity of which an

officer is an agent").  "Based upon the understanding that it is duplicative to name both a

government entity and the entity's employees in their official capacity, courts have routinely

dismissed corresponding claims against individuals named in their official capacity as redundant

and an inefficient use of judicial resources." *Castanza v. Town of Brookhaven*, 700 F. Supp. 2d

277, 284 (E.D.N.Y. 2010).  Accordingly, because the City of Hudson is named in both the

Complaint and the proposed Amended Complaint, the proposed state law false arrest claim

against Defendant Moore in his official capacity is rejected as futile.  *See Castanza*, 700 F. Supp.

2d at 284 (collecting cases); *accord*, *Schaller v. Cty. of Suffolk*, 2008 N.Y. Misc. LEXIS 9730, at

*21-22, 2008 NY Slip Op 31699(U) (N.Y. Sup. Ct. June 17, 2008).

### 2.    Claim of Negligence

The Fourth Cause of Action against Defendant Moore in Plaintiff's proposed Amended

Complaint alleges that he breached his duty of care when he physically harmed Plaintiff while

---

[8]    The Court notes that this statement appears confusing because "[t]he elements of a claim
of false arrest under § 1983 are 'substantially the same' as the elements of a false arrest claim under New
York law." *Hygh v. Jacobs*, 961 F.2d 359, 366 (2d Cir. 1992) (quoting *Posr v. Doherty* 944 F.2d 91, 96
[2d Cir. 1991]).

placing her in handcuffs.  (Dkt. No. 19, Attach. 2, ¶¶ 41-45 [Pl.'s Am. Compl.].)  Defendants

argue that this claim is futile because, having alleged a claim for false arrest, Plaintiff cannot also

assert a claim for negligence.  (Dkt. No. 13, Attach. 4, at 13 [Defs.' Mem. of Law].)

In opposition, Plaintiff argues that she posed no danger to anyone at the time of her

arrest, there was no legitimate reason to treat her in the manner that she was treated, and the

exercise of due care would have prevented the physical injuries that she suffered.  (Dkt. No. 19,

Attach. 3, at 14 [Pl.'s Opp'n Mem. of Law].)

In reply, Defendants reiterate their argument that a negligent arrest claim is not

cognizable as a matter of law.  (Dkt. No. 23, Attach. 3, at 5-6 [Defs.' Reply Mem. of Law].)

After carefully considering the matter, the Court agrees with Defendants for the reasons

stated in their memorandum of law and reply memorandum of law.  (Dkt. No. 13, Attach. 4, at

13 [Defs.' Mem. of Law]; Dkt. No. 23, Attach. 3, at 5-6 [Defs.' Reply Mem. of Law].)  In

addition to those reasons, the Court notes that "[i]t is well-settled under New York law that,

where a plaintiff seeks damages for 'injury resulting from false arrest and detention,' he 'cannot

recover under broad general principles of negligence but, instead, must proceed by way of the

traditional remedy of false arrest.'" *Alexiadis v. New York Coll. of Health Professions*, 891 F.

Supp. 2d 418, 435 n.16 (E.D.N.Y. 2012) (quoting *Santoro v. Town of Smithtown*, 40 A.D. 3d

736, 738 [N.Y. App. Div. 2d Dept. 2007]); *accord*, *Secard v. Dep't of Soc. Servs. of Cty. of

Nassau*, 204 A.D.2d 425, 427 (N.Y. App. Div. 2d Dept. 1994).  Accordingly, Plaintiff's

negligence claim based upon her alleged false arrest against Defendant Moore is futile.  In

addition, because the Third Cause of Action against Defendant John Doe and the Second Cause

of Action against the City of Hudson in Plaintiff's proposed Amended Complaint assert similar

claims, those claims are deemed futile as well.

### 3.    Claim of Excessive Force[9]

The Second Cause of Action in Plaintiff's proposed Amended Complaint contains a

claim for excessive force under 42 U.S.C. § 1983 against Defendant Moore.  (Dkt. No. 19,

Attach. 2, ¶¶ 46-49 [Pl.'s Am. Compl.].)  In support of this claim, Plaintiff sets forth the

following three arguments: (1) Defendant Moore used excessive force to restrain her, despite the

fact that she was being fully cooperative and did not pose any danger to anyone at the time; (2)

Defendant Moore's use of excessive force was deliberate and intended to send a message to her

and other members of First Church; and (3) Defendant Moore is not entitled to qualified

immunity because (a) he knew that his conduct was unlawful, (b) Plaintiff had a clearly

established right to be free from false arrest, malicious prosecution, assault and battery, and the

use of excessive force, and (c) no officer of reasonable competence would have made the same

choices as Defendant Moore.  (Dkt. No. 19, Attach. 3, at 12-13 [Pl.'s Opp'n Mem. of Law].)

In opposition, Defendants argue that Plaintiff has failed to allege facts plausibly

suggesting a claim of excessive force because she merely alleges that she was placed in

handcuffs and does not allege that she suffered any injury beyond temporary discomfort.  (Dkt.

No. 23, Attach. 3, at 6 [Defs.' Reply Mem. of Law].)  Finally, with regard to qualified immunity,

Defendants state that they are not moving (at this time) to dismiss Plaintiff's claims against

Defendant Moore on this basis.  (*Id.* at 7.)

After carefully considering the matter, the Court agrees with Plaintiff for the reasons

stated in her opposition memorandum of law.  (Dkt. No. 19, Attach. 3, at 12 [Pl.'s Opp'n Mem.

of Law].)  To those reasons, the Court adds the following analysis.

---

[9]    Defendants seek to dismiss Plaintiff's excessive force claim against Defendant Moore but state that they are not now seeking to dismiss Plaintiff's "common law assault and battery against Chief Moore." (Dkt. No. 23, Attach. 3, at 7 [Defs.' Reply Mem. of Law].)

The Second Circuit has held that, "[a]lthough handcuffing will be the reasonable course in many, if not most arrest situations, we do not accept the principle that handcuffing is *per se* reasonable." *Soares v. State of Conn.*, 8 F.3d 917, 921-22 (2d Cir. 1993) (declining to find that the handcuffing of a person arrested for a minor and non-violent crime was objectively reasonable as a matter of law); *accord*, *Arum v. Miller*, 331 F. Supp. 2d 99, 110 (E.D.N.Y. 2004). Rather, "the reasonableness test established in *Graham* [*v. Connor*, 490 U.S. 386 (1989)] remains the applicable test for determining when excessive force has been used . . . ." *Jones v. Parmley*, 456 F.3d 46, 62 (2d Cir. 2006). In *Graham*, the United States Supreme Court held that, because

> [t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, . . . its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

*Graham*, 490 U.S. at 396 (internal quotations and citations omitted).

In addition, while the Second Circuit does not appear to have yet so held, the majority of district courts in the Second Circuit have recognized that some injury, even if insignificant, must result from the use of force. *See, e.g., Greenaway v. Cnty. of Nassau*, 11-CV-2024, 2015 WL 1509486, at *9 (E.D.N.Y. March 31, 2015) ("[A]n arrestee must prove some injury, even if insignificant, to prevail [o]n an excessive force claim.") (quotation marks omitted); *Pascual v. Fernandez,* 11-CV-7075, 2013 WL 474292, at *6 (S.D.N.Y. Jan. 29, 2013) ("[I]n order to recover under an excessive force claim, a plaintiff must claim to have been injured to some degree."); *Ivey v. Lyman*, 02-CV-0470, 2005 WL 1397134, at *4 (N.D.N.Y. June 1, 2005)

(DiBianco, M.J.) ("In an excessive force case, plaintiff must prove some injury, but it does not have to be a 'significant' injury in order to prevail."); *Ortiz v. Brymer*, 02-CV-1369, 2004 WL 1875044, at *2 (D. Conn. Aug. 17, 2004) ("Ortiz must prove some injury, even an insignificant one, to prevail."); *Davis v. U.S.*, 03-CV-1800, 2004 WL 324880, at *10, n.6 (S.D.N.Y. Feb. 19, 2004) ("An arrestee must prove some injury, even if insignificant, to prevail on an excessive force claim.") (quotation marks omitted); *Horton v. Town of Brookfield*, 98-CV-1834, 2001 WL 263299, at *7 (D. Conn. March 15, 2001) ("Where the plaintiff does not allege that . . . an injury resulted from being handcuffed, however, courts have found that no constitutional violation exists and have dismissed the claims."); *Murphy v. Neuberger*, 94-CV-7421, 1996 WL 442797 at *8 (S.D.N.Y. Aug. 6, 1996) ("Although the injuries suffered need not be permanent or severe to recover under an excessive force claim, . . . plaintiff's complaint does not allege any injuries resulting from the use of handcuffs. . . .  Because the facts alleged do not constitute excessive force, plaintiff's claim is dismissed."); *Landy v. Irizarry*, 884 F. Supp. 788, 799 n.14 (S.D.N.Y. 1995) ("An arrestee must prove some injury, even if insignificant, to prevail [o]n an excessive force claim."); *Roundtree v. City of New York*, 778 F. Supp. 614, 622 (E.D.N.Y. 1991) ("[T]o conclude that a 'push' that does not cause the slightest of physical injuries to the plaintiff is nonetheless an actionable use of excessive force would be to hold that any physical contact by an arresting officer with the arrested person is actionable. This would transform the constitutional wrong of excessive force in arrest into the common law tort of battery; and it would reduce the holding in *Graham* [*v. Connor*] into an empty proposition against which no use of force is reasonable as a matter of law.").

-33-

Here, Plaintiff's proposed Amended Complaint plausibly suggests that the crime for which she was arrested was a relatively minor and non-violent one.  Moreover, the proposed Amended Complaint does not plausibly suggest that she posed an immediate threat to the safety of the officers or others, and that she was actively resisting arrest or attempting to evade arrest by flight.  Finally, the proposed Amended Complaint alleges that Defendant Moore "physically harmed" her when he turned her around, pressed her against the front window of 405 Warren Street, and twisted her right wrist while pushing on her right shoulder, before placing her in handcuffs.  (Dkt. No. 19, Attach. 2, ¶¶ 15, 52 [Pl.'s Am. Compl.].)[10]  Taking these allegations as true, the Court finds that Plaintiff has alleged facts plausibly suggesting that the use of force was excessive under the circumstances alleged.

The Court notes that *Soares* went on to hold that the officers in that case were entitled to qualified immunity on the excessive force claim because "[n]either the Supreme Court nor the Second Circuit has established that a person has the right not to be handcuffed in the course of a particular arrest, even if he does not resist or attempt to flee." *Soares*, 8 F.3d at 922; *accord*, *McCart v. Vill. of Mt. Morris*, 2011 WL 3421505, at *12 (W.D.N.Y. Aug. 4, 2011). Here, because Defendants have expressly stated that they are not seeking to dismiss Plaintiff's Fourth Amendment excessive force claim against Defendant Moore on the ground of qualified immunity at this time, Plaintiff's burden with regard to her request for leave to amend her original Complaint to add this claim is lightened.  *See, infra,* Part III.G. of this Decision and Order.  While Plaintiff would have had some difficulty meeting her ordinary burden (because of *Soares*), the Court finds that she has met this lightened burden.

---

[10]     The Court finds that some injury, although insignificant, is plausible–albeit barely–based on these particular factual allegations.

**F.     Whether Plaintiff Has Alleged Facts Plausibly Suggesting a *Monell* Claim Against the City of Hudson**

Defendants argue that Plaintiff has failed to allege facts plausibly suggesting municipal liability against the City of Hudson for the following five reasons: (1) Plaintiff has failed to allege a formal policy or custom that led to a violation of her constitutional rights; (2) Plaintiff has failed to allege any decision or act taken by a policy-making official; (3) Plaintiff has failed to allege that any of the individual Defendants had the ability to create policies for the City of Hudson; (4) the Complaint alleges only a single incident of alleged unconstitutional activity, which is generally insufficient to establish the existence of a municipal policy or custom; and (5) Plaintiff's § 1983 claims amount to nothing more than claims of respondeat superior/vicarious liability.  (Dkt. No. 13, Attach. 4, at 10-13 [Defs.' Mem. of Law].)

In opposition, Plaintiff argues that she has alleged facts in her Amended Complaint that plausibly suggest a *Monell* claim for the following three reasons: (1) the actions taken by Defendants Roberts and Moore were intended to intimidate Plaintiff, as a member of First Church, due to ongoing litigation between First Church and the City of Hudson regarding ownership of the subject premises; (2) as Corporation Counsel and Chief of Police respectively, Defendants Roberts and Moore are policy-making officials; and (3) Plaintiff argues that the Second Circuit has found a police chief to be a policy-making official, citing *Jones v. Town of E. Haver*, 691 F.3d 72 (2d Cir. 2012).  (Dkt. No. 19, Attach. 3, at 14-17 [Pl.'s Opp'n Mem. of Law].)

In reply, Defendants argue that Plaintiff has limited her § 1983 claim to liability premised on the involvement of high ranking policy-making officials and note that Plaintiff has not presented any authority for the point of law that Defendant Roberts, as Corporation Counsel,

qualifies as a policy-making official.  (Dkt. No. 23, Attach. 3, at 7 [Defs.' Reply Mem. of Law].)

Accordingly, Defendants argue that Plaintiff cannot rely on any alleged actions taken by

Defendant Roberts to support her § 1983 claim against the City of Hudson.  (*Id.* at 7-8.)

After carefully considering the matter, the Court agrees with Plaintiff, in part for the

reasons stated in her opposition memorandum of law.  (Dkt. No. 19, Attach. 3, at 14-17 [Pl.'s

Opp'n Mem. of Law].)  To those reasons, the Court adds the following analysis.

To recover against a municipality in a § 1983 action, the plaintiff must establish that (1)

the municipality had a policy or custom that was responsible for the alleged deprivation of

constitutional rights, or (2) that a failure of supervision or lack of training is "so severe as to

reach the level of 'gross negligence' or 'deliberate indifference' to the deprivation of plaintiff's

constitutional rights." *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 691

(1978).  With respect to the first prong, where no custom or official policy can be demonstrated,

"municipal liability may also be imposed where a final policymaker of the municipality is

personally responsible for the constitutional violation." *Polite v. Town of Clarkstown*, 120 F.

Supp. 2d 381, 384 (S.D.N.Y. 2000) (citing *McMillian v. Monroe Cty.*, 520 U.S. 781, 784-86

[1997]).  "A final policymaker is an official of a municipality who 'speak[s] with final

policymaking authority' for the municipality 'in a particular area, or on a particular issue.'"

*Polite*, 120 F. Supp. 2d at 384; *see also Gronowski v. Spencer*, 424 F.3d 285, 296 (2d Cir. 2005)

(holding that, where a municipal official "has final authority over significant matters involving

the exercise of discretion, his choices represent government policy.") (internal quotations

omitted).  However, "the official in question need not be a municipal policymaker for all

purposes. Rather, with respect to the conduct challenged, he must be responsible under state law

for making policy in that area of the [municipality's] business." *Jeffes v. Barnes*, 208 F.3d 49, 57 (2d Cir. 2000).  "The question of who qualifies as a final policymaker is one of state law." *Jeffes*, 208 F.3d at 57 (citing *St. Louis v. Praprotnik*, 485 U.S. 112, 123 [1988]); *accord*, *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989).

In the present case, the Court does not find dispositive the fact that, solely because of his position as Chief of Police, Defendant Moore has final policy-making authority that can be attributed to the City of Hudson as it relates to the alleged violation of Plaintiff's right to be free of excessive force.  As stated above, Plaintiff cites to *Jones v. Town of E. Haven* for the point of law that a police chief should be considered a policy-making official.  However, the Second Circuit did not create such a bright-line rule in *Jones*; rather, in that case, the Court alluded to the fact that the police chief *may be*, under unidentified circumstances, considered a policy-making official.  *Jones*, 691 F.3d at 83 (noting that an arrestee "never complained to [the police chief] or any policy-maker until his trial testimony in this case").  In other words, a plaintiff must allege facts *in addition* to the fact that the defendant was a police chief.  *See Santiago v. Warminster Tp.*, 629 F.3d 121, 135 n.11 (3d Cir. 2010) (holding that, while whether a police chief "is a final policymaker is ultimately a legal rather than a factual question, that does not relieve [the plaintiff] of the obligation to plead in some fashion that [the police chief] had final policy making authority, as that is a key element of a *Monell* claim"); *Losch v. Borough of Parkesburg, Pa.*, 736 F.2d 903, 911 (3d Cir. 1984) (finding plaintiff's argument that police chief was a "'de facto policy making official' and that therefore his actions represented official city policy" unpersuasive without additional evidence).

Here, the Court finds that the fact that Defendant Moore was the alleged Chief of Police, *and* was directly called upon to personally effect the arrest, plausibly suggests that he may have policy-making authority with regard to the use of force during arrests.  *See DePrima v. Vill. of Catskill*, 105 F. Supp. 2d 75, 81 (E.D.N.Y. 2000) (holding that, "as chief of police, [defendant was] a policymaker with respect to making arrests, and therefore, his conduct can be attributed to the Village"); *cf. Griffin v. Vill. of Frankfort*, 10-CV-0627, 2012 WL 4491276, at *4-5 (N.D.N.Y. Sept. 28, 2012) (Mordue, J.) (finding allegations in complaint suggested that police chief, who was alleged tortfeasor, was policymaker as far as police matters were concerned where police chief testified that no other village official instructed him regarding operation of police department); *cf. Ameduri v. Vill. of Frankfort*, 10 F. Supp. 3d 320, 344 (N.D.N.Y. 2014) (Mordue, J.) (dismissing argument that the same police chief in *Griffin* was not a policymaker where plaintiff failed to submit evidence, on summary judgment, concerning the existence of an unlawful policy on the part of the village that police chief perpetrated by virtue of his position).

For these reasons, Defendant's motion to dismiss Plaintiff's § 1983 claim against the City of Hudson is denied.  However, in the interest of thoroughness, the Court will revisit this issue on a summary judgment motion, should Defendants decide to file one.

### G.     Whether Plaintiff's Remaining Claims Should Be Dismissed

As indicated above in Part I.A. of this Decision and Order, Defendants have moved to dismiss the following claims: (1) a claim of conspiracy; (2) a claim of failure to train and/or supervise under both state and federal law; (3) a claim of failure to intervene; (4) any claims brought under 42 U.S.C. §§ 1985 and 1986; (5) any claims brought under the Fifth Amendment; and (6) any demand for punitive damages against the City of Hudson.  (Dkt. No. 13, Attach. 4, at 8-19 [Defs.' Mem. of Law].)

With regard to Plaintiff's conspiracy claim and claims under 42 U.S.C. §§ 1985 and 1986, Defendants argue that they are barred by the intra-corporate conspiracy doctrine and that Plaintiff has failed to meet the heightened pleading requirements necessary to state a conspiracy claim. (*Id.* at 8-10.)

With regard to Plaintiff's federal failure to train and/or supervise claim, Defendants argue that Plaintiff has failed to allege facts plausibly suggesting the following: (1) deliberate indifference; (2) that a policymaker knew that his employees would confront a given situation and that the wrong choice would frequently cause the deprivation of a citizen's constitutional rights; and (3) that it could be implied that the officers, in exercising their discretion, so often violate constitutional rights that the need for further training must have been plainly obvious to the City's policymakers. (*Id.* at 11-12.) Furthermore, Defendants argue that dismissal is warranted because Plaintiff's mere allegation that the municipality failed to train its employees is insufficient to establish a municipal policy or custom and is nothing more than a single incident of alleged unconstitutional activity. (*Id.* at 12.)

With regard to Plaintiff's failure to train and/or supervise claim under New York State law, Defendants argue that it should be dismissed as redundant because Plaintiff is already seeking to hold the City vicariously liable for the actions of its employees. (*Id.* at 14.)

With regard to Plaintiff's failure to intervene claim, Defendants argue that it should be dismissed on the basis that (a) Plaintiff has alleged that Defendant Moore directly participated in the alleged violations by placing Plaintiff under arrest, and (b) the City could not have intervened because it is an entity. (*Id.* at 19.)

With regard to Plaintiff's Fifth Amendment claim, Defendants argue that Plaintiff has failed to allege facts plausibly suggesting any basis for relief or a violation under this Amendment.  (*Id.*)

With regard to Plaintiff's claim for punitive damages against the City, Defendants argue that this claim should be dismissed because a municipality is immune from such liability.  (*Id.*)

Finally, in their reply memorandum of law, Defendants argue that Plaintiff has failed to respond to their arguments regarding the dismissal of these claims and, therefore, the claims should be deemed abandoned.  (Dkt. No.  23, Attach. 3, at 1-2 [Defs.' Reply Mem. of Law].)

In this District, when a non-movant fails to oppose a legal argument asserted by a movant, the movant's burden with regard to that argument is lightened, such that, in order to succeed on that argument, the movant need only show that the argument possess facial merit, which has appropriately been characterized as a "modest" burden.  *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determined that the moving party has met to demonstrate entitlement to the relief requested therein . . . .");  *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL2473509, at *2 & nn.2, 3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

Alternatively, the court can deem the challenged claim abandoned (regardless of the facial merit of the unresponded-to argument).  *See Jackson v. Federal Exp.*, No. 12-1475, 2014 WL 4412333, at *6 (2d Cir. 2014) ("Where a partial response to a motion is made– i.e., referencing some claims or defenses but not others–a distinction between *pro se* and counseled responses is appropriate. In the case of a *pro se*, the district court should examine every claim or

defense with a view to determining whether summary judgment is legally and factually appropriate. In contrast, in the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned. In all cases in which summary judgment is granted, the district court must provide an explanation sufficient to allow appellate review. This explanation should, where appropriate, include a finding of abandonment of undefended claims or defenses.").

After carefully considering Defendants' arguments in support of dismissal of the above-stated claims, the Court finds that they possess facial merit, such that Defendants have demonstrated their entitlement to the relief requested. Alternatively, the claims are deemed abandoned. For all of these reasons, these claims are dismissed.

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion to dismiss Plaintiff's Complaint (Dkt. No. 13) is **GRANTED** in part and **DENIED** in part, such that all of Plaintiff's claims are **DISMISSED except** the following claims, which **SURVIVE** Defendants' motion:

(1)    Plaintiff's claims for false arrest under the Fourth Amendment and 42 U.S.C. § 1983 against Defendants Moore and the City of Hudson;

(2)    Plaintiff's claims for excessive force under the Fourth Amendment and 42 U.S.C. § 1983 against Defendants Moore, John Doe, and the City of Hudson; and

(3)    Plaintiff's claims for assault and battery under New York State law against Defendants Moore and John Doe; and it is further

**ORDERED** that Plaintiff's cross-motion for leave to file an Amended Complaint (Dkt. No. 19) is **GRANTED** in part and **DENIED** in part, such that Plaintiff may file a signed copy

-41-

of her proposed Amended Complaint, but all of the claims contained therein are **<u>DISMISSED</u>**

**except** the claims recited in the preceding paragraph; and it is further

      **ORDERED** that Plaintiff shall file a signed copy of her Amended Complaint within

**SEVEN (7) DAYS** of the date of entry of this Decision and Order.  Defendant shall file an

answer to the Plaintiff's Amended Complaint within 14 days of the date of the Amended

Complaint is filed pursuant to Fed.R.Civ.P. Rule 12(a)(4)(a), and this case is referred back to

Magistrate Judge Peebles for the setting of pretrial scheduling deadlines.

Dated: November 20, 2015
       Syracuse, New York

                                 Hon. Glenn T. Suddaby
                                 Chief, U.S. District Judge