UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SHARON MORRISON,

                       Plaintiff,                1:14-CV-1409
                                                   (GTS/DEP)
v.

THE CITY OF HUDSON; L. EDWARD MOORE;
and SHANE BOWER,

                       Defendants.
_____

APPEARANCES:                          OF COUNSEL:

WAITE & ASSOCIATES, P.C.           STEPHEN J. WAITE, ESQ.
  Counsel for Plaintiff
199 New Scotland Ave.
Albany, New York 12208

GOLBERG SEGALLA, LLP           JONATHAN BERNSTEIN, ESQ.
  Counsel for Defendants
8 Southwoods Blvd., Suite 300
Albany, New York 12211

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this civil rights action filed by Sharon Morrison

("Plaintiff") against the City of Hudson, L. Edward Moore, and Shane Bower ("Defendants"), is

Defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56. (Dkt. No. 54.) For

the reasons set forth below, Defendants' motion is granted in part and denied in part.

# I. RELEVANT BACKGROUND

## A. Plaintiff's Amended Complaint

Generally, liberally construed, Plaintiff's Amended Complaint alleges as follows. (Dkt. No. 44.) On or about August 21, 2013, the City of Hudson and the First Church of God in Christ, Inc. ("First Church"), were engaged in legal proceedings in which First Church sought to set aside a previously entered *in rem* tax foreclosure judgment. (*Id.*, ¶ 6.) The tax foreclosure involved a parcel of real property owned by First Church located at 405 Warren Street in the City of Hudson, New York ("405 Warren Street" or "subject premises"). (*Id.*) As part of its mission, First Church used this property to house indigent individuals and allow certain members of the Church, including Plaintiff, to operate a business. (*Id.*, ¶¶ 8, 11.) Members of First Church's congregation and the individuals residing at 405 Warren Street are predominantly African American. (*Id.*, ¶¶ 7-8.)

On or about August 17, 2013, the City of Hudson caused written notice to be placed on the building located at 405 Warren Street, advising the occupants that the property had been sold for unpaid taxes and that the Code Enforcement Officer and Building Inspector of the City of Hudson had determined that the building was unfit for human habitation due to several violations of the City and State Fire Prevention and Building Code. (*Id.*, ¶ 10.) The notice further advised the occupants that they were to vacate the premises by August 27, 2013. (*Id.*)

On August 21, 2013, Plaintiff traveled to the subject premises for purposes of entering her business[1] on the first floor of the building. (*Id.*, ¶ 11.) Before entering the building, Plaintiff

---

[1]     The Amended Complaint alleges that First Church permitted Plaintiff, and other members of the Church, to operate a hair salon on the subject premises. (Dkt. No. 44, ¶ 8 [Pl.'s Am. Compl.].)

was confronted by Cheryl Roberts, who was on the premises in her capacity as Corporation Counsel for the City of Hudson.  (*Id.*, ¶ 12.)  Ms. Roberts advised Plaintiff that she would be trespassing if she entered the premises.  (*Id.*)  Plaintiff proceeded to enter the building, believing she had the legal right to do so, and stayed for approximately fifteen minutes.  (*Id.*)  While in the building, Ms. Roberts contacted Defendant Moore, Chief of Police for the City of Hudson, for the purpose of having Plaintiff arrested.  (*Id.*)  Upon exiting the building, Plaintiff was confronted by Defendant Moore, who informed her that she was trespassing and began to place her under arrest.  (*Id.*, ¶ 13.)  In the process of placing Plaintiff under arrest, Defendant Moore placed his hands on Plaintiff, turned her around, pressed Plaintiff against the front window of the building, twisted her right wrist while pushing on Plaintiff's right shoulder, and placed Plaintiff's right and then left wrists into handcuffs.  (*Id.*, ¶ 14.)  Defendant Moore then turned Plaintiff over to Defendant Shane Bower, a police officer, who placed Plaintiff in the rear seat of a police car and transported her to the City of Hudson Police Department.  (*Id.*, ¶ 15.)

After arriving at the police station, Defendant Bower handcuffed Plaintiff's hands to a bench and placed her ankles in restraining shackles.  (*Id.*, ¶ 16.)  Defendant Bower completed a criminal complaint against Plaintiff, alleging that she had trespassed on 405 Warren Street, in violation of Section 140.05 of the Penal Law of the State of New York.  (*Id.*, ¶ 17.)  Forty-five minutes after being detained at the station, Plaintiff was presented with an appearance ticket and released.  (*Id.*, ¶ 18.)  Thereafter, Plaintiff appeared in Hudson City Court and the charges against her were dismissed.  (*Id.*)

Based upon the foregoing factual allegations, the Amended Complaint sets forth the following claims: (1) a claim for false arrest against Defendant Moore and the City of Hudson;

(2) a claim for assault and battery against Defendants Moore and Bower; and (3) a claim for excessive force against Defendants Moore, Bower, and the City of Hudson. (*Id.*, ¶¶ 19-44.)

**B.      Statement of Undisputed Material Facts**

Unless otherwise noted, the following facts were asserted and supported with accurate record citations by Defendants in their Statement of Material Facts ("Rule 7.1 Statement") and expressly admitted by Plaintiff in her response thereto ("Rule 7.1 Response"). (*Compare* Dkt. No. 54, Attach. 17 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 55, Attach. 11 [Pl.'s Rule 7.1 Response].)

1.      The building involved in this matter is located at 405 Warren Street, Hudson, New York ("the building").

2.      On the street level of the building is Aprile's House of Beauty.

3.      By Amended Order and Judgment, entered August 8, 2012, with the Columbia County Clerk's Office, the subject building was deemed owned by the City of Hudson.

4.      Plaintiff testified at a hearing conducted pursuant to N.Y. Gen. Mun. Law § 50-h ("50-h hearing"), that she does not own Aprile's House of Beauty.

5.      Plaintiff was a volunteer hairdresser who did not run Aprile's House of Beauty. Plaintiff split fees that she received from her customers with Aprile's House of Beauty.

6.      Before August 21, 2013, Plaintiff received a notice that was affixed to the building indicating that the building no longer belonged to the church of which she was a member.

7.      Before August 21, 2013, Plaintiff gave her key to the building to the City of Hudson Police Department after being told that the building belonged to the City of Hudson.

8.      On August 21, 2013, City Attorney Cheryl Roberts gave Plaintiff a ten-day notice to vacate the premises.

9.      On August 21, 2013, Plaintiff went inside the building.

10.      When Plaintiff exited the building on August 21, 2013, Defendant Moore approached her.

11.      Defendant Moore informed Plaintiff that the church did not own the building and that she was trespassing.

12.      Defendant Moore asked Plaintiff for her name and she refused to respond.

13.      Plaintiff was taken into custody and brought to the City of Hudson Police Department.

14.      Plaintiff was issued an appearance ticket for trespassing under N.Y. Penal Law § 140.05.

**C.      The Parties' Briefing on Defendants' Motion**

**1.      Defendants' Memorandum of Law**

Generally, in their memorandum of law, Defendants assert six arguments.  (Dkt. No. 54, Attach. 16 [Defs.' Mem. of Law].)

First, Defendants argue that Plaintiff's false arrest claim against Defendant Moore and the City of Hudson must be dismissed because the Court previously held in its Decision and Order dated November 20, 2015 (Dkt. No. 25), that probable cause existed for Plaintiff's arrest for trespassing.  (Dkt. No. 54, Attach. 16, at 7-8 [Defs.' Mem. of Law].)[2]  Because probable

---

[2]      Page citations refer to the page numbers used on CM/ECF rather than the actual page numbers contained in the parties' respective motion papers.

cause acts as a complete defense to a claim for false arrest, Defendants argue that Plaintiff's claim must be dismissed. (*Id.* at 7.)

Second, Defendants argue that Plaintiff's excessive force claim must be dismissed because (a) the force employed by Defendants Moore and Bower was proper, (b) the use of handcuffs and ankle shackles was objectively reasonable, and (c) Plaintiff has not complained of any injuries as a result of the use of force. (*Id.* at 9-12.)

Third, Defendants argue that, because the essential elements of excessive force and state law assault and battery claims are substantially identical, Plaintiff's assault and battery claim should be dismissed for the same reasons as her excessive force claim. (*Id.* at 13.) Furthermore, Defendants argue that there was nothing offensive about how Defendants Moore and Bower took Plaintiff into custody because she was arrested for trespass, handcuffed, taken into police custody, processed at the police station, and then released. (*Id.* at 14.)

Fourth, Defendants argue that Plaintiff's *Monell* claim against the City of Hudson should be dismissed because Plaintiff's arrest was not the product of a formal policy, unlawful practice, or a failure to train. (*Id.* at 15.) Rather, Defendants argue that the undisputed material facts demonstrate that Plaintiff's arrest was nothing more than a textbook arrest for trespass that was based on probable cause. (*Id.*) Furthermore, Defendants argue that Plaintiff cannot save her *Monell* claim by arguing that Defendant Moore was a policymaker because Defendant Moore did not violate Plaintiff's constitutional rights when she was arrested. (*Id.* at 15-16.) Similarly, Defendants argue that Plaintiff cannot rely on any actions taken by Defendant Bower because a *Monell* claim cannot be based on vicarious liability. (*Id.* at 16.)

Fifth, Defendants argue that Defendant Moore is entitled to qualified immunity with respect to Plaintiff's false arrest claim because (a) Defendant Moore had probable cause to arrest Plaintiff, (b) Plaintiff was not a tenant of the property and did not own it, and (c) Plaintiff would not comply with Defendant Moore's questioning about her actions and, instead, she tried to brush past Defendant Moore.  (*Id.* at 16-18.)

Sixth, and finally, with respect to Plaintiff's excessive force claim, Defendants argue that Defendants Moore and Bower are entitled to qualified immunity because (a) it is not clearly established that police cannot use handcuffs and ankle shackles under the circumstances of this case, (b) Plaintiff attempted to flee from Defendant Moore by trying to brush past him while he was trying to speak with her, (c) Defendant Moore merely handcuffed Plaintiff and did not use any more force than was necessary, (d) Defendant Bower loosened Plaintiff's handcuffs at the police station, (e) Defendant Bower arrived on the scene after Plaintiff was arrested and was entitled to rely on the decisions already made by Defendant Moore, and (f) the use of ankle shackles at the police station was objectively reasonable to prevent Plaintiff from escaping, which was necessary after she had previously tried to brush past Defendant Moore.  (*Id.* at 19-20.)

### 2.     Plaintiff's Opposition Memorandum of Law

Generally, in opposition to Defendants' motion, Plaintiff asserts the following five arguments.  (Dkt. No. 55, Attach. 10 [Pl.'s Opp'n Mem. of Law].)

First, Plaintiff argues that her false arrest claim should not be dismissed because, on August 17, 2013, a ten-day notice to vacate the premises, as required by N.Y. Real. Prop. Acts. Law ("RPAPL") § 713 and a pre-condition to the commencement of an eviction proceeding, was

affixed to the subject building, which gave Aprile's House of Beauty, as well as Plaintiff as a licensee, ten days to vacate the premises. (*Id.* at 4.) Furthermore, Plaintiff argues that Defendants have not offered any admissible record evidence demonstrating that Aprile's House of Beauty was (a) named as a party in the tax foreclosure proceeding, or (b) the subject of any summary proceeding resulting in an order of eviction following the award of title to the subject premises to the City of Hudson. (*Id.*) Therefore, Plaintiff argues that, although the City of Hudson may have obtained ownership to the premises in August of 2012, it did not have possessory rights senior to those of individuals and entities lawfully occupying the premises before the City's ownership. (*Id.*) Plaintiff argues that the City of Hudson was required to obtain an order of eviction before it could claim exclusive possessory rights to the premises and lawfully evict the current tenants. (*Id.*)

Moreover, Plaintiff argues that Defendants were aware in May of 2013 that it was necessary to obtain an order of eviction before attempting to remove tenants from the subject premises. (*Id.* at 5.) Specifically, Plaintiff argues that Defendant Moore acknowledged during his deposition that the entire City of Hudson Police Department was aware, as of May 31, 2013, that tenants of the subject premises could not be removed without an order of eviction. (*Id.*) Plaintiff argues that Defendant Moore acknowledged that he had not seen an order of eviction and did not ask to see one before arresting Plaintiff for trespass. (*Id.*) Accordingly, Plaintiff argues that there is a genuine dispute of material fact regarding Defendant Moore's knowledge of Plaintiff's right to be on the subject premises. (*Id.* at 6.)

Second, Plaintiff argues that there is a genuine dispute of material fact regarding her excessive force claim. (*Id.* at 8-9.) Specifically, Plaintiff argues that there is conflicting record

evidence regarding whether she attempted to evade Defendant Moore or "brush" past him when he approached her. (*Id.* at 9.) Indeed, Plaintiff argues that she did not attempt to leave or flee when she was stopped by Defendant Moore or that she was not agitated or anxious. (*Id.*) Rather, Plaintiff argues that, based on the audio recording of Defendant Moore speaking with the police dispatcher, it is clear that Defendant Moore was the one who was angry and agitated. (*Id.* at 10.)

Similarly, Plaintiff argues that it was unreasonable for Defendant Moore to handcuff her under the circumstances, let alone handcuff her in an aggressive manner by "roughing her up" and twisting her arm behind her back. (*Id.*) Plaintiff argues that medical records demonstrate that, as a result of Defendant Moore's actions, she suffered a shoulder injury from trauma to the tendons surrounding her rotator cuff and an avulsion fracture to the pisiform bone in her wrist. (*Id.*) Furthermore, Plaintiff argues that she was essentially chained to a bench with her wrists handcuffed and her legs placed in ankle bracelets at the police station. (*Id.*) Plaintiff argues that the alleged justification for these actions was that she allegedly attempted to flee from Defendant Moore. (*Id.*) However, Plaintiff argues that Defendant Bower testified at his deposition that Defendant Moore did not have a conversation with him regarding a risk of escape or an attempt to resist arrest. (*Id.*)

Third, Plaintiff argues that there is a genuine dispute of material fact regarding whether Defendant Moore committed an assault and battery because Defendant Moore made bodily contact with Plaintiff that was intended to be, and was, offensive. (*Id.* at 12.) Specifically, Plaintiff argues that it was unnecessary for Defendant Moore to push her up against a building and twist her arms behind her back to effectuate her arrest when he could have simply requested

that she put her arms behind her back.  (*Id.*)  Similarly, Plaintiff argues that she was placed in apprehension of imminent harmful or offensive contact by Defendant Moore's conduct.  (*Id.*)

Fourth, Plaintiff argues that her *Monell* claim should not be dismissed because there is admissible record evidence demonstrating that the City of Hudson adopted a policy to remove the tenants of the subject premises without affording them due process of law.  (*Id.* at 13.) Plaintiff cites portions of Ms. Roberts's deposition testimony where Ms. Roberts testified that she wanted all tenants out of the building by August 23, 2013, even though the requisite ten-day notice was not served until August 17, 2013.  (*Id.* at 12-13.)  Furthermore, Plaintiff argues that Defendant Moore testified at his deposition that he does not ordinarily become involved in evictions but that he was summoned to the subject premises by Ms. Roberts after Plaintiff entered the building.  (*Id.* at 13.)  Plaintiff argues that the City of Hudson wanted to auction the subject premises and that, in order to do so, it needed to get rid of the current tenants.  (*Id.* at 12.) Therefore, Plaintiff argues that the City of Hudson, through Ms. Roberts and the City of Hudson Police Department, embarked on a campaign to remove tenants from the subject premises without providing them with due process.  (*Id.*)

Fifth, and finally, Plaintiff argues that Defendants Moore and Bower are not entitled to qualified immunity because a genuine dispute of material fact exists with regard to the objective reasonableness of their actions in the way that they treated Plaintiff.  (*Id.* at 15-16.)  Furthermore, Plaintiff reiterates her argument that Defendant Moore was aware before the incident in question that he could not forcibly remove occupants of the subject premises without an order of eviction. (*Id.* at 15.)

### 3.     Defendants' Reply Memorandum of Law

In reply to Plaintiff's opposition memorandum of law, Defendants make the following five arguments.  (Dkt. No. 59, Attach. 1 [Defs.' Reply Mem. of Law].)

First, Defendants argue that Plaintiff's false arrest claim must be dismissed because, assuming *arguendo* that Plaintiff was a licensee, this Court has already held that (a) being a licensee does not supply a cognizable legal interest in the continued occupancy of the subject premises, (b) any alleged permission that First Church gave Plaintiff to be on the premises is irrelevant because the City of Hudson owned the building, and (c) the City of Hudson, through Ms. Roberts, told Plaintiff to leave the premises and she refused, thereby establishing that she unlawfully entered the premises.  (*Id.* at 5.)  Furthermore, Defendants argue that whether the City of Hudson was required to provide a ten-day notice to vacate is irrelevant because this is not an eviction action and Defendants were not trying to evict Plaintiff from Aprile's House of Beauty.  (*Id.*)  Defendants argue that, in any event, because Plaintiff was not a tenant of the building, a ten-day notice to vacate would not apply to her.  (*Id.* at 5-6.)  Similarly, Defendants argue that Plaintiff was not entitled to legal process before being removed from the subject premises because she has asserted that she was a licensee and not a tenant.  (*Id.* at 6.)

With respect to whether probable cause existed for Plaintiff's arrest, Defendants argue that Plaintiff refused to provide an explanation for her presence on the subject premises after exiting the building that she was told not to enter by Ms. Roberts.  (*Id.*)  Defendants argue that Plaintiff's failure to provide an explanation left no choice but for them to conclude that she was trespassing and a police officer is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest.  (*Id.*)

Second, Defendants argue that Plaintiff has failed to create a genuine dispute of material fact regarding her excessive force claim. (*Id.* at 7.) Defendants reiterate their argument that Plaintiff was merely handcuffed and placed in a police vehicle. (*Id.*) Defendants further argue that handcuffs were warranted because Plaintiff has admitted that she refused to cooperate with Defendant Moore by answering his questions. (*Id.*) In addition, Defendants argue that Plaintiff ignored Ms. Roberts when she told Plaintiff not to enter the building. (*Id.*)

With respect to Plaintiff's alleged injuries, Defendants argue that Plaintiff has not pointed to admissible record evidence demonstrating that her injuries were the result of the incident in question. (*Id.*) Furthermore, Defendants argue that Plaintiff testified at her deposition that she was not diagnosed with any broken bones when she went to the hospital after the incident. (*Id.* at 7-8.)

With respect to whether Defendant Bower was justified in keeping Plaintiff in restraints, Defendants argue that communication between Defendants Bower and Moore was not necessary for Defendant Bower's actions to be justified. (*Id.* at 8.) Specifically, Defendants argue that Defendant Bower had the right to keep Plaintiff in restraints because Defendant Moore had already arrested her and deemed the use of handcuffs to be necessary. (*Id.*) Moreover, Defendants argue that there is nothing excessive about placing ankle restraints and handcuffs on someone in custody to prevent escape as a matter of police policy. (*Id.*)

Third, Defendants argue that Plaintiff's common law assault and battery claim must be dismissed because (a) there was probable cause for Plaintiff's arrest and therefore Defendants Moore and Bower had the right to touch her while taking her into custody, (b) this claim is duplicative of Plaintiff's excessive force claim, and (c) Plaintiff could not have been in

reasonable apprehension of offensive contact because she chose not to cooperate with Defendant Moore after trespassing on the subject premises. (*Id.* at 9.)

Fourth, Defendants argue that Plaintiff's *Monell* claim must be dismissed for the following four reasons: (a) Plaintiff does not have a due process claim and therefore her argument that tenants of the subject premises were entitled to due process and a ten-day notice to vacate is irrelevant, (b) Plaintiff did not have any right to an eviction proceeding or written notice to vacate because she was a licensee and not a tenant, (c) because Plaintiff's excessive force and false arrest claims must be dismissed, there is no constitutional violation on which to premise a *Monell* claim, and (d) whether Defendant Moore is a policy-making official is irrelevant because he did nothing wrong and, to the extent that Plaintiff is claiming that the City of Hudson is liable under *Monell* based on Defendant Moore's actions, such a claim is duplicative of the claims asserted against Defendant Moore in his individual capacity. (*Id.* at 9-10.)

Fifth, and finally, Defendants reiterate their argument that Defendants Bower and Moore are entitled to qualified immunity because probable cause or, at the very least, arguable probable cause existed for Plaintiff's arrest. (*Id.* at 10-11.) Furthermore, Defendants argue that the use of handcuffs to arrest Plaintiff does not bar qualified immunity because there is no authoritative case law that bars such use. (*Id.* at 11.) In any event, Defendants argue that Defendant Moore used the proper amount of force in arresting Plaintiff under the circumstances and Defendant Bower followed police policy when he kept Plaintiff in restraints at the police station. (*Id.* at 11-12.) Finally, Defendants argue that qualified immunity also applies to bar Plaintiff's state law claims because this matter involves the exercise of police discretion in making an arrest. (*Id.* at 12.)

II.     **LEGAL STANDARD GOVERNING A MOTION FOR SUMMARY JUDGMENT**

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[3] As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movant. *Anderson*, 477 U.S. at 255. In addition, "[the movant] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). However, when the movant has met its initial burden, the non-movant must come forward with specific facts showing a genuine issue of material fact for trial. Fed. R. Civ. P. 56(a),(c),(e).

Implied in the above-stated burden-shifting standard is the fact that, where a non-movant fails to respond to a motion for summary judgment, a district court has no duty to perform an

_____

[3]      As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) [citation omitted]. As the Supreme Court has explained, "[The non-movant] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

-14-

independent review of the record to find proof of a factual dispute.[4]  Of course, when a non-movant fails to respond to a motion for summary judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996).  Rather, as indicated above, the Court must assure itself that, based on the undisputed material facts, the law indeed warrants judgment for the movant.  *Champion*, 76 F.3d at 486; *Allen v. Comprehensive Analytical Group, Inc.*, 140 F. Supp.2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.); N.D.N.Y. L.R. 7.1(b)(3).  What the non-movant's failure to respond to the motion does is lighten the movant's burden.

For these reasons, this Court has often enforced Local Rule 7.1(a)(3) by deeming facts set forth in a movant's statement of material facts to be admitted, where (1) those facts are supported by evidence in the record, and (2) the non-movant has failed to properly respond to that statement,[5]

Similarly, in this District, where a non-movant has failed to respond to a movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local Rule 7.1(b)(3).[6]  Stated another way, when a non-movant fails to oppose a legal argument asserted by

_____

[4]      *Cusamano v. Sobek*, 604 F. Supp.2d 416, 426 & n.2 (N.D.N.Y. 2009) (Suddaby, J.) (citing cases).

[5]      Among other things, Local Rule 7.1(a)(3) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises.  N.D.N.Y. L. R. 7.1(a)(3).

[6]      *See, e.g.*, *Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the

a movant, the movant may succeed on the argument by showing that the argument possess facial

merit, which has appropriately been characterized as a "modest" burden. *See* N.D.N.Y. L.R.

7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determined that the

moving party has met its burden to demonstrate entitlement to the relief requested therein . . . .");

*Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009)

(Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL 2473509, at *2 &

n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

## III.    ANALYSIS

### A.    Whether Plaintiff's False Arrest Claim Should Be Dismissed

After carefully considering the matter, the Court answers this question in the affirmative

for the reasons stated in Defendants' memoranda of law.  (Dkt. No. 54, Attach. 16, at 7-9 [Defs.'

Mem. of Law]; Dkt. No. 59, Attach. 1, at 5-6 [Defs.' Reply Mem. of Law].)  To those reasons,

the Court adds the following analysis.

The Second Circuit has made clear that "[t]he existence of probable cause to arrest . . . is

a complete defense to an action for false arrest." *Jenkins v. City of New York*, 478 F.3d 76, 84

(2d Cir. 2007).  "In general, probable cause to arrest exists when the officers have knowledge or

reasonably trustworthy information of facts and circumstances that are sufficient to warrant a

person of reasonable caution in the belief that the person to be arrested has committed or is

committing a crime." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996).  "The question of

---

arguments regarded, under Local Rule 7.1[b][3]; *Devito v. Smithkline Beecham Corp.*, 02-CV-
0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's
failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a
concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers[.]" *Weyant*, 101 F.3d at 852. Importantly, the "validity of an arrest does not depend upon an ultimate finding of guilt or innocence." *Peterson v. Cty. of Nassau*, 995 F. Supp. 305, 313 (E.D.N.Y. 1998). Similarly, "the probable cause inquiry is not necessarily based upon the offense actually invoked by the arresting officer but upon whether the facts known at the time of the arrest objectively provided probable cause to arrest." *Jaegly v. Couch*, 439 F.3d 149, 153 (2d Cir. 2006) (internal quotation marks omitted).

Here, it is undisputed that Ms. Roberts advised Plaintiff that she was trespassing and attempted to question her regarding her identity but she refused to respond and entered the building any way. (Dkt. No. 54, Attach. 12, at 32:6-16 [Roberts Dep.]; Dkt. No. 54, Attach. 7, at 45:4-11, 46:13-23 [Pl.'s Dep.].) Ms. Roberts shared this information with Defendant Moore when he arrived on the scene. (Dkt. No. 54, Attach. 12, at 32:17-33:2 [Roberts Dep.]; Dkt. No. 54, Attach. 14, at 50:13-20 [Def. Moore Dep.].) *See also Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000) ("[I]t is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness.") (internal quotation marks omitted); *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994) ("[P]robable cause can exist even where it is based on mistaken information, so long as the arresting officer acted reasonably and in good faith in relying on that information."). When Plaintiff exited the building, Defendant Moore told Plaintiff that she was trespassing and

-17-

asked her for her pedigree information but Plaintiff refused to respond.[7] (Dkt. No. 54, Attach. 7, at 38:6-15 [Pl.'s Dep.]; Dkt. No. 54, Attach. 14, at 53:12-54:7 [Def. Moore Dep.].) Accordingly, based on these undisputed facts, including (a) the information regarding Plaintiff's trespass that was communicated to Defendant Moore by Ms. Roberts, (b) Defendant Moore's personal observation of Plaintiff leaving the building, and (c) her refusal to stop after Defendant Moore informed her that she was trespassing, the Court finds that there was probable cause to arrest Plaintiff for trespass.

Furthermore, the Court finds Plaintiff's argument that she was entitled to due process and/or that she was permitted to remain on the subject premises until the expiration of the ten-day notice to vacate to be unpersuasive. As the Court explained in its underlying Decision and Order, there is no dispute that the City of Hudson was the owner of the subject premises at the time of Plaintiff's arrest and that Plaintiff was a licensee of Aprile's House of Beauty and/or First Church. (Dkt. No. 25, at 22 [Decision and Order].)[8] Therefore, Plaintiff, as a licensee, did

---

[7]     The Court notes that a civilian may refuse to answer questions when approached by a police officer and that, in and of itself, this refusal may not serve as the basis for an arrest. *See Dancy v. McGinley*, 843 F.3d 93, 112 (2d Cir. 2016) ("In New York, unless he is otherwise lawfully detained, an individual to whom a police officer addresses a question has a constitutional right not to respond. He may remain silent or walk or run away. His refusal to answer is not a crime. The failure to stop or cooperate by identifying oneself or answering questions cannot be the predicate for an arrest absent other circumstances constituting probable cause.") (citations and brackets omitted); *accord*, *Uzoukwu v. City of New York*, 805 F.3d 409, 415-16 (2d Cir. 2015). However, Defendant Moore had, at a minimum, reasonable suspicion to believe that Plaintiff was trespassing, and, after informing Plaintiff that she was trespassing, Plaintiff ignored Defendant Moore's questions and attempted to walk away. *See U.S. v. Navedo*, 694 F.3d 463, 472 (3d Cir. 2012) ("It is well established that where police officers reasonably suspect that an individual may be engaged in criminal activity, and the individual deliberately takes flight when the officers attempt to stop and question him, the officers generally no longer have mere reasonable suspicion, but probable cause to arrest.").

[8]     Page citations refer to the page numbers used on CM/ECF.

not have "a cognizable interest in the continued occupancy of [the] property." *Smith v. Cty. of Nassau*, 10-CV-4874, 2015 WL 1507767, at *8 (E.D.N.Y. Mar. 31, 2015); *see also Pelt v. City of New York*, 11-CV-5633, 2013 WL 4647500, at *8-9 (E.D.N.Y. Aug. 28, 2013) (holding that, "[u]nder New York law, it is well settled that a 'licensee acquires no possessory interest in property'").  Because Plaintiff did not have a cognizable interest in the continued occupancy of the property, Plaintiff was not entitled to legal process before her removal.  *See Smith*, 2015 WL 1507767, at *9 (stating that a special proceeding under RPAPL § 713 "is merely permissive, not mandatory, as it does not replace an owner's right to self-help in removing a licensee from a property, and therefore, does not confer any affirmative rights to licensees"); *Pelt*, 2013 WL 4647500, at *9 ("Contrary to Plaintiff's contention, [RPAPL] § 713 does not obligate landlords to provide notice to licensees prior to eviction from a premises; nor does § 713 confer upon licensees a constitutionally protected property interest in or legal right to that premises."); *Gladsky v. Sessa*, 06-CV-3134, 2007 WL 2769494, at *8 (E.D.N.Y. Sept. 21, 2007) ("Although RPAPL 713 does permit a special proceeding as an additional means of effectuating the removal of a nontenant, such as a licensee, it does not replace an owner's common law right to oust an interloper without legal process.") (internal quotation marks omitted); *Visken v. Oriole Realty Corp.*, 305 A.D.2d 493, 495 (N.Y. App. Div. 2d Dept. 2003) (holding that, "[s]ince the plaintiff was a mere licensee or 'squatter,' [defendant], as owner, had an owner's common-law right to oust her without legal process"); *Paulino v. Wright*, 210 A.D.2d 171, 172 (N.Y. App. Div. 1st Dept.) ("While it is true that *tenants* . . . may be evicted only through lawful procedure, others, such as licensees and squatters, who are covered by RPAPL 713 are not so protected.") (internal quotation marks omitted) (emphasis added).

Therefore, for all of the foregoing reasons, Plaintiff's false arrest claim is dismissed.

**B.** **Whether Plaintiff's Excessive Force Claim Against Defendants Moore and Bower Should Be Dismissed**

After carefully considering the matter, the Court answers this question in the negative with respect to Defendant Moore for the reasons stated in Plaintiff's opposition memorandum of law. (Dkt. No. 55, Attach. 10, at 8-11 [Pl.'s Opp'n Mem. of Law].) However, the Court answers this question in the affirmative with respect to Defendant Bower for the reasons stated in Defendants' memoranda of law. (Dkt. No. 54, Attach. 16, at 12 [Defs.' Mem. of Law]; Dkt. No. 59, Attach. 1, at 8 [Defs.' Reply Mem. of Law].) To those reasons, the Court adds the following analysis.

"The Fourth Amendment prohibits the use of excessive force in making an arrest, and whether the force used is excessive is to be analyzed under that Amendment's 'reasonableness standard.'" *Brown v. City of N.Y.*, 798 F.3d 94, 100 (2d Cir. 2015). "Determining excessiveness requires 'a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Brown*, 798 F.3d at 100 (quoting *Graham v. Connor*, 490 U.S. 386, 396 [1989]). In conducting this balancing, a court generally considers the following three factors: "(1) the nature and severity of the crime leading to the arrest, (2) whether the suspect poses an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010). Furthermore, "[t]o determine whether the handcuffing of an arrestee was reasonable, the handcuffing must be viewed in light of the minimal amount of force necessary to maintain custody of the arrestee." *De Michele v. City of New York*, 09-CV-9334, 2012 WL 4354763, at *13 (S.D.N.Y. Sept. 24, 2012) (internal quotation marks omitted). "In evaluating the reasonableness of handcuffing, a

Court is to consider evidence that: (1) the handcuffs were unreasonably tight; (2) the defendants ignored the arrestee's pleas that the handcuffs were too tight; and (3) the degree of injury to the wrists." *De Michele*, 2012 WL 4354763, at *13 (internal quotation marks omitted). "Given the fact-specific nature of the inquiry, granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 123 (2d Cir. 2004).

As this Court noted in its underlying Decision and Order, the Second Circuit has declined to find that the use of handcuffs in effecting an arrest is *per se* reasonable. (Dkt. No. 25, at 32 [citing *Soares v. State of Conn.*, 8 F.3d 917, 921-22 [2d Cir. 1993].) However, the Second Circuit also noted in *Soares* that "[n]either the Supreme Court nor the Second Circuit has established that a person has the right not to be handcuffed in the course of a particular arrest, even if he does not resist or attempt to flee." *Soares*, 8 F.3d at 921-22.

### 1.    Defendant Moore

In the present case, the Court finds that there is a genuine dispute of material fact regarding the objective reasonableness of the force used by Defendant Moore to effectuate Plaintiff's arrest. Specifically, a review of the record evidence and the *Graham* factors reveal that Plaintiff was arrested for a relatively minor crime and did not pose an immediate threat to the safety of Defendant Moore or others. *See Crowell v. Kirkpatrick*, 400 F. App'x 592, 594-95 (2d Cir. 2010) ("Plaintiffs were arrested for relatively minor crimes of trespass and resisting arrest[.]"). However, with respect to the third *Graham* factor, the admissible record evidence demonstrates that Plaintiff attempted to flee from Defendant Moore. (Dkt. No. 54, Attach. 14, at

54:5 [Def. Moore Dep.] [stating that Plaintiff "walked past me" after attempting to question her]; Dkt. No. 54, Attach. 12, at 33:18, 44:24-45:2 [Roberts Dep.] [stating that Plaintiff "pushed into" Defendant Moore and that "she shoved or tried to shove away"].)  Given this evidence, the Court finds that it was not unreasonable for Defendant Moore to use handcuffs in arresting Plaintiff. However, for the reasons discussed below, Plaintiff has submitted admissible record evidence demonstrating that she suffered injuries as a result of the amount of force Defendant Moore used when handcuffing her.  *See Horton v. Town of Brookfield*, 98-CV-1834, 2001 WL 263299, at *7 (D. Conn. Mar. 15, 2001) ("Handcuffing has been found to give rise to a claim of excessive force where an individual suffers an injury as a result of being handcuffed."); *Crews v. Cty. of Nassau*, 996 F. Supp. 2d 186, 212 (E.D.N.Y. 2014) (holding that genuine dispute of material fact existed as to whether police officer's handcuffing of arrestee by twisting his arm around his back was reasonable and whether pain arrestee claimed to have experienced was sufficiently severe).

Plaintiff testified at a 50-h hearing that Defendant Moore "turned me around quickly and he handcuffed me.  He twisted my wrist and put me in handcuffs and he pushed my shoulder." (Dkt. No. 54, Attach. 7, at 40:19-21 [Morrison Dep.].)  Plaintiff was then pushed up against the window of the beauty salon.  (*Id.* at 41:18-19; 52:21-53:16.)  Plaintiff explained that it was not the tightness of the handcuffs that caused her pain but the way that Defendant Moore twisted her wrist while handcuffing her.  (*Id.* at 51:2-22.)  Plaintiff's medical records establish that she was diagnosed with an avulsion fracture of the pisiform bone in her right wrist as well as having suffered trauma to her shoulder. (Dkt. No. 54, Attach. 11., at 13, 22.)  Plaintiff testified that she did not have a pre-existing injury to either of these parts of her body before the incident in question.  (Dkt. No. 54, Attach. 7, at 51:23-52:3 [Morrison Dep.].)

Although Defendants argue that Plaintiff has failed to submit evidence establishing that her alleged injuries were caused by her arrest, the Court disagrees, particularly because the Court must resolve all ambiguities and draw all reasonable inferences in the light more favorable to Plaintiff. Most notably, Plaintiff's medical records from her visit to the emergency room at a local hospital list the same date as the incident in question (i.e., August 21, 2013). (Dkt. No. 54, Attach. 11.) Furthermore, the records state that Plaintiff's chief complaint was as follows: "[patient] was in handcuffs today - c/o right shoulder and wrist pain." (*Id.* at 19-20.) Finally, Plaintiff testified at her 50-h hearing that she went to the hospital for treatment later in the day after being released from police custody. (Dkt. No. 54, Attach. 7, at 61:9-17 [Morrison Dep.].)

### 2. Defendant Bower

The Court finds that Plaintiff's excessive force claim against Defendant Bower should be dismissed because (a) Plaintiff was already placed in handcuffs by Defendant Moore when Defendant Bower brought her to the police station, (b) Plaintiff admitted that she did not suffer any injury to her ankles or legs when Defendant Bower put her in ankle restraints, (c) Plaintiff never requested medical attention or complained of an injury while at the police station, (d) Plaintiff never requested that her handcuffs be loosened, and (e) Defendants Moore and Bower testified that it was police policy to use ankle restraints on persons being processed at the police station due to flight risks. (Dkt. No. 54, Attach. 7, at 51:18-22; 58:7-12; 59:17-20 [Morrison Dep.]; Dkt. No. 54, Attach. 15, at 24:12-21, 29:10-16, 32:22-33:3 [Bower Dep.]; Dkt. No. 54, Attach. 14, at 63:4-13 [Moore Dep.].) Accordingly, the Court finds that it was reasonable, under the circumstances, to use restraints on Plaintiff while she was in custody at the police station and that, because Plaintiff admits that she did not suffer any injuries while in Defendant Bower's custody, Plaintiff's excessive force claim against Defendant Bower should be dismissed.

### C. Whether Plaintiff's Assault and Battery Claim Against Defendants Moore and Bower Should Be Dismissed

After carefully considering the matter, the Court answers this question in the negative with respect to Defendant Moore, but answers this question in the affirmative with respect to Defendant Bower, for the reasons discussed above in Part III.B. of this Decision and Order. *See Benson v. Yaeger*, 05-CV-0784, 2009 WL 1584324, at *4 n.6 (W.D.N.Y. June 3, 2009) ("The test for whether a plaintiff can maintain a New York State law assault and battery cause of action against law enforcement officials is the exact same test as the one used to analyze a Fourth Amendment excessive force claim . . . and thus, summary judgment will be denied as to plaintiff's assault and battery claims if summary judgment is denied as to plaintiff's Fourth Amendment excessive force claims.") (internal quotation marks and citation omitted); *Ahern v. City of Syracuse,* 411 F. Supp. 2d 132, 143-44 (N.D.N.Y. 2006) (Munson, J.) ("Because plaintiff's claims for assault and battery parallel plaintiff's excessive force claims and involve questions of fact as detailed above, defendants motion for summary judgment as to plaintiff's assault and battery claims against [police officers] is DENIED."); *DeVito v. Barrant*, 03-CV-1927, 2005 WL 2033722, at *7 (E.D.N.Y. Aug. 23, 2005) (denying summary judgment as to state law assault and battery claims based on prior determination that summary judgment should be denied as to plaintiff's section 1983 excessive force claim); *accord*, *Greenaway v. Cty. of Nassau*, 97 F. Supp. 3d 225, 237 (E.D.N.Y. 2015).

### D. Whether Plaintiff's *Monell* Claim Should Be Dismissed

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their reply memorandum of law. (Dkt. No. 59, Attach. 1, at 9-10 [Defs.' Reply Mem. of Law].) To those reasons, the Court adds the following analysis.

When distilled to its essence, Plaintiff's opposition memorandum of law sets forth the following two bases for the City of Hudson's liability under *Monell*: (1) the City of Hudson embarked on a campaign to remove tenants from the subject premises without the benefit of due process by coercing, intimidating, and misinforming tenants through high-level city officials that they were not allowed on the property; and (2) the acts complained of were committed by policymaking officials, i.e., Defendant Moore and Ms. Roberts. (Dkt. No. 55, Attach. 10, at 12-14 [Pl.'s Opp'n Mem. of Law].) The Court agrees with Defendants that the first basis is insufficient to impose liability on the City of Hudson under *Monell* because a due process claim is not currently pending in this case and, in any event, this Court has already found that Plaintiff, as a licensee, was not entitled to eviction proceedings before being removed from the subject premises.

With respect to the second basis for liability, Plaintiff has recycled her argument that has already been considered and rejected by this Court when it adjudicated Defendants' underlying motion to dismiss. Specifically, Plaintiff argues that, "a single act, if an act of an official policy, can suffice to hold a municipality liable" and that a "police chief has been viewed by the [Second] Circuit as a policymaking official." (*Id.* at 14 [citing *Jones v. Town of E. Haver*, 691 F.3d 72 (2d Cir. 2012)].) However, as this Court stated in its underlying Decision and Order, "the Second Circuit did not create such a bright-line rule in *Jones* [that a police chief should be considered a policy-making official]; rather, in that case, the Court alluded to the fact that the police chief *may be*, under unidentified circumstances, considered a policy-making official." (Dkt. No. 25, at 37 [Decision and Order].) As this Court explained, "a plaintiff must allege facts *in addition* to the fact that the defendant was a police chief." (*Id.*) Indeed, "[w]hether an official

-25-

has final policymaking authority is a legal question, determined on the basis of state law. . . . The critical inquiry is not whether an official *generally* has final policymaking authority; rather, the court must specifically determine whether the government official is a final policymaker with respect to the particular conduct challenged in the lawsuit." *Doe v. City of Waterbury*, 453 F. Supp. 2d 537, 543-44 (D. Conn. 2006).

In the present case, Plaintiff has failed to point to any additional evidence that Defendant Moore's conduct represented the "official policy" of the City of Hudson because he was acting in a policymaking capacity when he arrested her. *See Wooten v. Logan*, 92 F. App'x 143, 146 (6th Cir. 2004) (holding that county was not liable for sheriff's actions because plaintiff failed to show that sheriff "was acting in a policymaking capacity when he detained and assaulted" the passenger in a vehicle); *Gantt v. Ferrara*, 15-CV-7661, 2017 WL 1192889, at *7 n.8 (S.D.N.Y. Mar. 29, 2017) ("Although Defendant Ferrara was the Chief of Police at the time the alleged conduct took place, his position does not alone render him a policymaker for the purposes of *Monell* liability."); *Marsili v. Vill. of Dillonvale, Ohio*, 12-CV-0741, 2014 WL 1922236, at *25 (S.D. Ohio May 13, 2014) (holding that police chief, who was "performing a common police action that ultimately led to the alleged violation of rights[,]" was not acting in a policymaking capacity when he arrested plaintiff).  Therefore, Plaintiff's *Monell* claim against the City of Hudson is dismissed.

### E.      Whether Defendant Moore is Entitled to Qualified Immunity

After carefully considering the matter, the Court answers this question in the negative, in part for the reasons stated by Plaintiff in her opposition memorandum of law.  (Dkt. No. 55, Attach. 10, at 15-17 [Pl.'s Opp'n Mem. of Law].)  To those reasons, the Court adds the following analysis.

"As a general rule, police officers are entitled to qualified immunity if (1) their conduct does not violate clearly established constitutional rights, or (2) it was objectively reasonable for them to believe their acts did not violate those rights." *Kerman v. City of New York*, 374 F.3d 93, 108 (2d Cir. 2004).  "The objective reasonableness test is met–and the defendant is entitled to qualified immunity–if 'officers of reasonable competence could disagree' on the legality of the defendant's actions."  *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995).  In determining whether an officer is entitled to qualified immunity, the facts must be "taken in the light most favorable to the party asserting the injury." *Loria v. Gorman*, 306 F.3d 1271, 1281 (2d Cir. 2002).

Although "[t]he right of an individual not to be subjected to excessive force has long been clearly established," *Calamia v. City of N.Y.*, 879 F.2d 1025, 1036 (2d Cir. 1989), the Second Circuit has also found that "the qualified immunity defense is generally available against excessive force claims." *Lennon*, 66 F.3d at 425.  "A right is clearly established when the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Dancy v. McGinley*, 843 F.3d 93, 106 (2d Cir. 2016) (internal quotation marks omitted).  If "officers of reasonable competence would disagree" regarding whether a defendant officer's actions were legal or not "in its particular factual context, the officer is entitled to qualified immunity."  *Dancy*, 843 F.3d at 106 (internal quotation marks omitted).  Only if it "is obvious that no reasonably competent officer would have taken such action," will the officer not be immune.  *Id.*  Thus, "qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Id.*

Here, the Court finds that Defendant Moore is not entitled to qualified immunity at this time because, accepting Plaintiff's version of the facts and drawing all reasonable inferences in her favor, there is a genuine dispute of material fact regarding whether Defendant Moore used more force than was necessary when he handcuffed Plaintiff. *See Fera v. City of Albany*, 568 F. Supp. 2d 248, 256 (N.D.N.Y. 2008) (Kahn, J.) ("When there is a dispute of material facts concerning the officers' conduct, a resolution of the facts by the jury is usually a necessary predicate to the Court's resolution of the legal issue of whether the officers are entitled to qualified immunity."). More importantly, the Court finds that officers of reasonable competence could disagree regarding the legality of Defendant Moore's actions. *See Matthews v. City of New York*, 889 F. Supp. 2d 418, 443 (E.D.N.Y. 2012) ("Here, additional facts are required to determine whether reasonable officers could have believed the degree of force used was reasonable and warranted. Moreover, given that plaintiffs allegedly did not resist arrest, the use of excessively tight handcuffs by the Individual Defendants could have been unwarranted."); *Samuell v. Cipriano*, 2016 WL 1089238, at *5 (D. Nev. Mar. 21, 2016) (denying qualified immunity where there was a question of material fact regarding the amount of force a police officer used to arrest plaintiff where "the officer twisted the suspect's body, pulling his wrist and arm and bending his arm upward to handcuff him . . . when the suspect was not resisting arrest or posing any apparent security threat").

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion for summary judgment is **GRANTED** **in part** and **DENIED** **in part**, such that all of Plaintiff's claims are **DISMISSED** **except** for the following two claims, which **SURVIVE** Defendants' motion:

(1)      Plaintiff's claim for excessive force under the Fourth Amendment and 42 U.S.C.

           §1983 against Defendant Moore; and

(2)      Plaintiff's claim for assault and battery under New York State law against

           Defendant Moore; and it is further

**ORDERED** that Plaintiff's Second Amended Complaint is dismissed against Defendants City of Hudson and Shane Bower; and it is further

**ORDERED** that counsel are direct to appear on **NOVEMBER 2, 2017 at 11:30 am** in Syracuse, NY, in chambers for a pretrial conference, at which time counsel are directed to appear with settlement authority, and in the event that the case does not settle, trial will be scheduled at that time. Plaintiff is further directed to forward a written settlement demand to Defendants no later than **OCTOBER 13, 2017**, and the parties are directed to engage in meaningful settlement negotiations before the conference. In the event that counsel feel settlement is unlikely, counsel may request to participate via telephone conference for the limited purpose of scheduling a trial date by electronically filing a letter request at least one week before the scheduled conference.

Dated: September 29, 2017
       Syracuse, New York

Hon. Glenn T. Suddaby
Chief, U.S. District Judge